SIMON BORG & CO. et al. v. NEW ORLEANS CITY R. CO. et al.

(District Court, E. D. Louisiana.   August 2, 1917.)

No. 15457.

1. CORPORATIONS ☞583 — CONSOLIDATION — CONSTRUCTION OF STATUTE — "THREE-FOURTHS OF ALL STOCKHOLDERS."

The provision of La. Act No. 100 of 1898, requiring a vote of "three-fourths of all the stockholders" of each corporation to effect a consolidation, means three-fourths of the number of shares and not of the holders, where by their charters each share of stock is entitled to one vote.

2. CORPORATIONS ☞194—STOCKHOLDERS' MEETINGS—LEGALITY OF ACTION.

Stockholders of a corporation who were present and voted at a stockholders' meeting cannot attack the validity of the action taken, on the ground that the officers who called the meeting were not legally qualified.

3. STREET RAILROADS ☞51.—CONSOLIDATION—REVIEW BY COURTS.

A consolidation of street railway companies, effected by the vote of a large majority of the stock, held not so inequitable on its face as to warrant intervention by a court of equity, at suit of minority stockholders, before its effect on their interests can be known.

4. EQUITY ☞38—RETENTION OF JURISDICTION FOR FUTURE RELIEF.

In a suit by minority stockholders to enjoin the carrying out of a plan for consolidation of the corporation with others, where injunction is denied on the ground that the consolidation has been lawfully approved by a majority of the stockholders, the court may properly retain jurisdiction to grant any equitable relief to which complainants may appear to be entitled after the effect of the consolidation is known.

In Equity.   Suit by Simon Borg & Co. and others against New Orleans City Railroad Company and others.   Decree for defendants.

Lazarus, Michel & Lazarus and David Sessler, all of New Orleans, La., for plaintiffs.

Howe, Fenner, Spencer & Cocke and McCloskey & Benedict, all of New Orleans, La., for defendants.

FOSTER, District Judge.   In this matter the pleadings are too voluminous to be concisely stated.   The case is this:   The New Orleans Railway & Light Company (hereafter called the Railway Company) is a holding company, owning nearly all the stock, say from 97 to 100 per cent., of the following named corporations, to wit, the New Orleans City Railroad Company (hereafter called the City Company), the Orleans Railroad Company, the New Orleans & Carrollton Railroad, Light & Power Company, the New Orleans & Pontchartrain Railroad Company, the St. Charles Street Railroad Company, and the Jefferson & Pontchartrain Railway Company.   These companies constitute together the street railway system of the city of New Orleans.

The Railway Company also owns nearly all the stock of the New Orleans Lighting Company and the New Orleans Gas Light Company. All of these companies maintain their corporate existence and the legal ownership of their franchises and physical property. The Railway Company itself owns a few miles of track, mainly extensions of the franchises of the other companies. The Railway Company operates the property of the City Company by virtue of a lease entered into on March 31, 1902, which runs to December 31, 1955, approximately the date of the expiration of the City Company's franchises. The plaintiffs and interveners together own 650 shares of the common stock of the City Company and 8 shares of its preferred stock, less than 1 per cent. The Railway Company owns over 97 per cent., the balance being held by some 36 individual stockholders.

On May 22, 1916, the meetings of stockholders of the said street railroads were held, and a plan of consolidation under the provisions of Act 100 of the General Assembly of Louisiana of July 12, 1898, was agreed to. At the meeting of the City Company plaintiffs appeared through counsel, and protested against the adoption of the plan without avail, and thereafter the bill was filed.

The bill prays that the consolidation agreement be held null and void, and for an injunction to prevent its execution. By a supplemental bill the cancellation of the lease from the City Company to the Railway Company and the appointment of a receiver to take charge of and operate the property is asked. By a second supplemental bill the prayer for the annulment of the lease is abandoned, but a receiver to superintend the lease is asked for. The interveners join with the plaintiffs and ask the same relief.

There are two main questions to be considered: First, is the consolidation illegal under the law of Louisiana? Second, is the proposed exchange of stock so inequitable as to warrant the interference of a court of equity?

[1] On the first question, it is contended on behalf of plaintiffs that, under the provisions of Act 100 of 1898, the consolidation was required to be approved by a three-fourths majority of the *stockholders*, and this means that the vote is to be counted per capita, regardless of the number of shares held by each stockholder; and, further, if the vote could be by shares, under the provisions of the law of Louisiana (section 7 J., Act 267 of 1914), the Railway Company could not legally vote more than 10 per cent. of the stock held by it, and therefore the consolidation was not approved by a three-fourths majority of the stockholders counted either way. There is no doubt that three-fourths of the stockholders, per capita, did not vote in favor of the consolidation.

Act 100 of 1898, par. 2, § 1, reads:

"* * * And that no such consolidation shall be consummated or completed until it and the terms and conditions thereof shall have been approved by three-fourths of all the stockholders of each of such consolidated companies. * * *"

There are other acts, to wit, Act 39 of 1877, Act 38 of 1882, and Act 259 of 1916, amending Act 100 of 1898, all dealing with public

service corporations and having the same provisions, while Act 158 of 1874, authorizing the consolidation of business and manufacturing companies, requires the consent of the owners of at least three-fifths of the *capital stock* of each company.

It is urged with great force and earnestness on behalf of the plaintiffs that it was the intention of the Legislature, when dealing with the consolidation of public service corporations, to require the consent of three-fourths of the stockholders regardless of the number of shares, and that this was for the purpose of protecting the minority stockholders. Act 100 of 1898 and the other acts in pari materia have not been considered by the Supreme Court of Louisiana. As upholding their contention, plaintiffs rely upon the case of Taylor v. Griswold, 14 N. J. Law, 239, 27 Am. Dec. 33. In this case the court applied the common-law rule, and held illegal a by-law of a corporation granting a vote to each share of stock, in the absence of any statute of the state or any provision of the charter. The defendants rely upon a number of cases, two of which are in point. In the case of Los Banos v. Jordan, Secretary of State, 167 Cal. 327, 139 Pac. 691, the Supreme Court of California construed a provision of the Civil Code of California, and held that the words "majority of stockholders" means a majority in interest of the stockholders, and not a majority in numbers only. In the case of Mower v. Staples, 32 Minn. 284, 20 N. W. 225, the Supreme Court of Minnesota held that a majority of stockholders, as ordinarily used, means a majority per capita when the right to vote is per capita, and a majority of stock when each share of stock is also entitled to a vote. The common-law rule has no application in Louisiana, and I am inclined to agree with the conclusion reached in the two cases last cited. By the provisions of the charters of all the companies interested in the proposed merger, each share of stock is entitled to one vote. In view of the modern trend in matters of this kind, it seems to me that the more logical and better interpretation to put upon the statute is that what constitutes a majority of stockholders and the manner of voting should be determined in each case by the provisions of the charters of the merging corporations.

Act 267 of 1914, known as the Corporation Act, § 7 J., is as follows:

"Corporations may hold stock in other corporations, and the capital stock of one corporation may be issued for capital stock in other corporations; provided, however, that no corporation shall be permitted to vote more than 10 per cent. of the capital stock of any other corporation, and whenever a given per cent. of the stock is required for any purpose, such per cent. shall be calculated on the total amount of outstanding stock entitled to vote."

Defendants contend this act has no application to them, as they acquired their stock before its adoption. This is immaterial, for, while the section limits the right of a corporation holding stock in another to the voting of only 10 per cent. of its stock, it also eliminates the surplus stock from consideration for all other purposes. In this connection it is clear that the merger was adopted by three-fourths of the stock entitled to vote, whether the vote of the Railway Company be restricted to 10 per cent. of its holdings or the full number of shares allowed to participate.

[2] Before passing this question, there remains to consider the further contention of plaintiffs that the board of directors and president of the City Company were not qualified officers because they were not owners of sufficient shares of stock in the corporation. There is a conflict of provisions in the charter; article 5 merely requiring a director to be a stockholder, and article 9 providing that, after the first board, all directors shall be holders of 50 shares each, common and preferred stock. Each of the directors concerned in this case is the owner of one share of stock, and other shares of stock to the extent required by article 9 of the charter were standing in their names on the books of the company, but admittedly were owned by the Railway Company. However, I consider it unnecessary to interpret the provisions of the charter. The directors and president were officers de facto, if not de jure, and any irregularity of their election would have no effect on the action of the stockholders at the meeting called by them, and otherwise regularly held, especially as plaintiffs had notice of the meeting and were present and participated.

[3] On the second question, it is contended by plaintiffs that the consolidation should be enjoined because grossly inequitable to the minority stockholders, for the following reasons: That under the lease by which the Railway Company operates the property of the City Company it is provided that in lieu of rent there shall be a semiannual payment of $50,000, to be applied as a dividend on the common stock, and a semiannual payment of $62,500, to be applied as a dividend on the preferred stock; that the Railway Company shall maintain the property in good condition and create a sinking fund for the payment of its mortgage indebtedness and the interest on same; that at the expiration of the lease the property will be returned to the stockholders free of any mortgages and incumbrances; and that, as the lease will be extinguished by confusion in the event of consolidation, the stockholders will be deprived of a certain dividend for 39 years and the ownership of valuable unincumbered property at the expiration of the lease, for which they will receive stock of doubtful value and without any guaranty as to its dividends. On the other hand, defendants contend that the stock of the new corporation will be more valuable than that for which it is exchanged; that at the expiration of the lease the property will still be burdened with mortgages exceeding $3,700,-000, and its value will be very little because of the expiration of the franchises.

[4] Courts of equity, and particularly the federal courts, are being called upon constantly to superintend the reorganization of public service corporations, and of course will always protect the minority stockholders against an unfair plan proposed by the majority. In this case there is much to be said on both sides; but, in my opinion, whether or not the plan proposed is unfair can only be properly determined after it is put into execution. Plaintiffs are the owners of certain shares of stock that have a definite market value. It is proposed to give them other shares of stock that will also have a market value. It is logical to suppose that the street railway system of New Orleans can be more economically operated and financed if the property is all

owned by one corporation, and, on all the facts before me, it is a reasonable presumption that the stock offered to the plaintiffs will have equally as much market value as the stock they now own. I think it competent for the court to retain jurisdiction to enforce equality of exchange, but it would be inequitable to the owners of the majority of the stock to prevent the consummation of the merger.

In view of these conclusions, and the withdrawal of the demand for the cancellation of the lease, it is unnecessary to consider the other questions presented by the pleadings.

The restraining order heretofore issued will be recalled, and the prayer for injunction and appointment of a receiver will be denied. The bill will be retained for the purpose of granting such other relief as the nature of the case may require within a reasonable time.