[No. 22076. Department Two. November 19, 1929.]

L. P. APPLEQUIST, *Appellant*, v. SWEDISH EVANGELICAL LUTHERAN GETHSEMANE CHURCH *et al.*, *Respondents.*[1]

*Clarence L. Gere,* for appellant.

*C. P. Bissett, Jr.,* for respondent Puget Sound Savings & Loan Association.

[1] Reported in 282 Pac. 224.

*Israel Nelson,* for respondents Swedish Evangelical Lutheran Gethsemane Church *et al.*

HOLCOMB, J.—Appellant brought this action to invalidate and cancel a mortgage made by respondent the church to respondent savings and loan association for $14,000 upon real estate in Seattle, belonging to respondent the church, to secure an indebtedness for a loan procured by the church from the loan association on July 21, 1925. The complaint alleges that the trustees of the church corporation had not qualified in that they had not subscribed to the oath of office; that they had no authority from the congregation to mortgage the premises; that the mortgagee knew that the mortgage was for an unlawful purpose; that no legal written notice was given as provided by law and that only a small number, much less than the majority, of the members of the corporation were present at any purported authorization. This action was not instituted by appellant until the filing of the complaint in April, 1928, shortly before the maturity of the mortgage.

The church was incorporated in November, 1892, under the then existing law relating to religious corporations. Code of 1881, § 2450; Laws of 1885-86, p. 86. The objects and purposes of the incorporation, as set forth in its articles, among other things, are to

" . . . acquire and own property, real and personal, occupy, use, control, manage and enjoy the same, and to mortgage, lease or dispose of such property or any portion thereof to and for the best interests and advantage of said corporation, and as the majority of the members thereof at any regular or special meeting called for the purpose, may direct."

The by-laws (called, by the incorporators, constitution) adopted in 1892, among other things, provide for a board of not more than nine trustees to hold all

property owned by the corporation in trust for it; that no purchase, sale or mortgage shall be made without proper authorization by the congregation; that meetings be held on ten days' notice, "so far as required by law or common practice," and in case of special meetings the subjects to be considered and acted upon shall be stated; that a majority of all votes cast shall be conclusive in all cases unless otherwise provided. The voting qualifications at all congregational meetings and elections are that the voters shall be such male persons as have reached the age of eighteen years, who are fully accredited members submissive to discipline, contribute according to their ability and are not under discipline under the provisions of the congregational constitution. No provision is made as to the number of qualified voters of the congregation required to constitute a quorum at congregational meetings.

The usual attendance at congregational meetings was from 100 to 125. How many so attending were qualified voters of the congregation, was never made a matter of record. On May 3, 1925, a bulletin was read from the pulpit by the pastor and afterwards passed to the congregation, and on May 10, 1925, a similar bulletin was also read and also delivered to the members then present, to the effect that a special or, as it was called, an extra meeting of the congregation had been called by the board of trustees of the voting members of the congregation, to be held in the church parlors on Friday, May 15, 1925, at 8:00 p. m., for the purpose of considering the sale of the present church property and the buying of a site for a new church. All members were urged to be present. The notice or bulletin was signed, in accordance with the usual practice of the church, by the pastor and the sec-

retary of the board of trustees. This first notice was more than ten days prior to the special meeting called, and was also in conformity with the usage of the church. It was a practice that had been followed for more years than appellant had been a member of the congregation, which was since 1909, of which he was well aware. Appellant has attended most of the annual meetings held according to the by-laws of the church in January each year, and most of the special meetings. He was present at the special congregational meeting held on May 15, 1925, at which meeting the mortgage in question was authorized and directed to be made by the congregation then present and voting, to which appellant raised no question either as to a quorum not being present or any other thing connected with the mortgage. In accordance with the authority given by the congregation at its special meeting, the trustees held a meeting on July 21, 1925, and unanimously authorized the mortgage in question and a further mortgage of $7,000 on property at Minor avenue and Union street, which mortgages were shortly thereafter executed by the trustees as the corporate mortgages of the church, with its corporate seal attached.

The minutes of the special meeting held on May 15, 1925, show that the first question to be acted upon by the meeting was that for which it was called, which was discussed for some time, and the trustees were thereupon authorized to purchase a new site for a new church building and to borrow money and mortgage the site of the old church building, together with the new site. A resolution was adopted authorizing the trustees to borrow money on the present church property, as well as on the new property, if necessary, and to mortgage any property belonging to the church corporation.

We think the foregoing statement of some of the facts in this case shows a glaring lack of equity on the part of appellant to raise the questions presented by his complaint, and that, in such a case as this, a grantee, or a mortgagee, dealing with such religious corporation cannot assume the whole burden of seeing that such corporations strictly comply with each and every detail in strict conformity with law and its own rules. Otherwise, no buyer or lender would be safe in dealing with such corporations upon instruments under seal and of the utmost formality and solemnity.

In this case, the rules of the church corporation were complied with more strictly and formally than is generally the case by such corporations. Its congregation acted with the number of voting members usually present to transact its most important business. As has been said, appellant was well aware that that was the case. If, as is contended by appellant, the congregation, at the time the mortgage was authorized, consisted of more than four hundred members, appellant himself has not shown how many voting members there were, and certainly the burden was upon him so to do in order to show that this authorization was invalid. He also stood by, without protest, when the congregation so transacted its business of importance during all of the years of his membership with about the same attendance.

There was no fraud upon the others, who did not attend, in that those not voting constituted an apparent majority and did not have a voice in the matter. They had the opportunity, under their own well recognized by-laws and usage, to be present and represented, and were not.

Even if this were a joint stock corporation and appellant were a stockholder therein, when he was pres-

ent at the special meeting which considered the matters he complains of, he is not in position to object to the form of notice or lack of notice of the meeting. *Simon Borg & Co. v. New Orleans City R. Co.,* 244 Fed. 617.

It is stated, as a general rule, in 23 R. C. L. 437, that:

"A majority of a church organization may direct and control church matters, consistently with the particular and general laws of the organization or denomination to which it belongs, and it is generally held that a majority of those present and voting at a regular meeting of a church or religious society governs, and its action is binding on the whole body, . . . In such elections the nonvoting must be counted as willing to be bound by the action of the majority of those who vote. Any other rule would lead to interminable trouble and uncertainty."

See, also, *Illinois Conference of Evangelical Ass'n. v. Plagge,* 177 Ill. 431, 53 N. E. 76.

Appellant insists that the majority meant by the by-laws of the corporation is a majority of all the members of the congregation, and that, without the vote of the majority of all the qualified voting members of the congregation, it is illegal. That contention has been rejected by a number of courts in cases where there were even statutory and constitutional prescriptions as to the number of voters required to vote upon special bond elections and other such matters. *Craig v. First Presbyterian Church of Pittsburg,* 88 Pa. St. 42, 32 Am. Rep. 417; *Schlichter v. Keiter,* 156 Pa. St. 119, 27 Atl. 25, 22 L. R. A. 161, and cases cited therein; *St. Joseph Township v. Rogers,* 83 U. S. 644; *County of Cass v. Johnston,* 95 U. S. 360; and *Carroll County v. Smith,* 111 U. S. 556.

Upon those authorities and others which were cited therein and have been examined, a majority of the

votes cast is generally held to be a majority of the votes.

As to the quorum, if appellant be conceded to be in a position to raise that question, where the corporators are not definite in number, that is, where they are uncertain, fluctuating or indefinite, it has long been settled that corporate action could be taken by those who assembled if the meeting was regularly called. *Rex v. Varlo,* 1 Cowp. (K. B.) 248; *Craig v. Pittsburg First Presbyterian Church, supra; Schlichter v. Keiter, supra; Duessel v. Proch,* 78 Conn. 343, 62 Atl. 152, 3 L. R. A. (N. S.) 854; 14 C. J. 895.

Appellant also contends that the church corporation is now controlled by legislation enacted since its corporation under the Code of 1881; namely, Laws of 1895, chap. 158, p. 400, and the amendments thereto enacted in 1907, chapter 75, Laws of 1907, p. 127 [Rem. Comp. Stat., § 3878].

The Laws of 1895, p. 403, § 11 [Rem. Comp. Stat., § 3882], specifically excepted such corporations as this organized and existing theretofore, and also provided that such corporations could, by following the proceedings therein prescribed, adopt the provisions of that act, which was never done by this corporation.

Chapter 75, Laws of 1907, p. 127, amended the Laws of 1895, p. 402, relating to voting, by amending § 7 thereof and also amended the section of that act relating to the filing of articles of incorporation and amendments thereto, which were the only changes made by the act of 1907. All corporations organized and existing under the code of 1881, as this corporation is, not having exercised their privilege of coming under the act of 1895 as was therein provided, are incorporated just as they were prior to the passage of the act of 1895.

There is no merit in the contention of appellant that the trustees had not taken the oath required by law and the by-laws of the church. They were, at all events, *de facto* officers and were permitted so to act by and for the corporation. *Simon Borg & Co. v. New Orleans City R. Co.*, 244 Fed. 617.

We find no merit in any of the other contentions made by appellant.

The judgment is right and is affirmed.

MITCHELL, C. J., FULLERTON, MAIN, and FRENCH, JJ., concur.

[1]Reported in 282 Pac. 203.