HORBAL *v.* ST. JOHN'S GREEK CATHOLIC CHURCH.

1. MORTGAGES—FORECLOSURE—JUDGMENT—RES JUDICATA.

Decree determining validity of first mortgage on church property, from which no appeal was taken, is *res judicata* in subsequent suit to foreclose second mortgage.

2. RELIGIOUS SOCIETIES—AUTHORITY TO MORTGAGE PROPERTY.

Where by-laws of church society, an ecclesiastical corporation, do not confer any power on parishioners to mortgage its property, mortgage authorized by parish meeting and signed by proper officers is void for want of authorization by board of trustees (2 Comp. Laws 1929, §§ 10112, 10115).

3. SAME—SPECIAL PARISH MEETING—PURPOSE MUST BE STATED IN NOTICE.

Failure of by-laws of church society to require specifically that purpose of special parish meeting must be stated in notice does not obviate necessity of such statement.

4. SAME—MORTGAGES—ESTOPPEL.

Where all parishioners were not present at special meeting authorizing execution of mortgage on church property to certain members as security for money advanced by them, church is not estopped from denying validity of said mortgage on ground that it was not authorized by board of trustees, even if all trustees were present.

5. SAME—ACTION BY BOARD OF TRUSTEES NECESSARY.

Where act may be performed only in pursuance of resolution or authority of board of trustees, it can only bind church corporation when board has acted thereon at legal meeting as board.

6. SAME—INNOCENT PURCHASERS.

Church members, taking mortgage on church property for antecedent debts, were or should have been familiar with all preceding transactions, and therefore may not claim status of innocent purchaser.

7. PARTIES—TRUSTEE PROPERLY MADE PARTY TO MORTGAGE FORECLOSURE.

Trustee refusing to act in interest of his *cestuis* in foreclosure of mortgage on church property was properly made party defendant.

Appeal from Wayne; Runnels (Herbert W.), J., presiding. Submitted June 14, 1932. (Docket No. 125, Calendar No. 36,476.) Decided October 3, 1932.

Bill by Anthony Horbal and another, individually and as trustees, against St. John's Greek Catholic Church of Detroit, Michigan, an ecclesiastical corporation, and others to foreclose a mortgage and for other relief. Cross-bill by defendant church against plaintiffs and others to set aside the mortgage and for other relief. Decree for plaintiffs. Defendant church appeals. Reversed, and decree entered for appellant.

*John Panchuk,* for plaintiffs.

*Cyrowski & Cyrowski,* for defendant church.

BUTZEL, J. St. John's Greek Catholic Church of Detroit, Michigan, an ecclesiastical corporation consecrated to religious purposes, defendant herein, has been engaged in litigation during a continuous period of 10 years. A brief reference to some of the litigation is necessary. The chief causes of the factionalism and schism within the church are fully set forth in the cases of *Komarynski* v. *Popovich,* 218 Mich. 481, and 232 Mich. 88, to which reference is made for the facts leading up to the instant case. In the case of *St. John's Greek Catholic Church of Detroit* v. *Commonwealth Federal Savings Bank of Detroit* (No. 147,826, Wayne circuit court in chancery), the liability of defendant to the banking corporation under a mortgage was redetermined and thereafter in case No. 160,099 in the Wayne circuit court in chancery, it was adjudged and decreed that Walter M. Nelson be subrogated to the rights of the bank under the mortgage, constituting a lien on

five lots on Cicotte avenue, Detroit, and the church building thereon. Nelson duly assigned his rights in the mortgage claim and lien to Max Chuchman and Michael Baran. The decree in case No. 160,099, *supra,* was entered on the 12th day of November, 1928, has not been appealed from, and is valid and binding upon the church. The sum of $2,065 with interest from November 12, 1928, remains due, in accordance with the decree, as a first lien on the church property. A number of smaller judgments rendered in the court of common pleas and one in circuit court are also involved in the instant case. The trial court in the instant case held that these judgments were improperly rendered. Since they have been set aside, they need not be further considered. Any other litigation in which the church was interested is not pertinent to the present issues.

Much money was advanced by members of the church to defray its regular expenses as well as to protect its interest in the litigation. The church owed sundry amounts to these members. A special meeting of the parishioners was held at the church house on October 21, 1927, in accordance with the following notice printed on postal cards in Ukrainian:

"Respected parishioner:

"You are notified that on Friday, 21st day of October, a special meeting will be held in the Parish Hall at 3464 Cicotte avenue. Kindly come to the meeting because the matter is very important. At 7 o'clock in the evening. Please bring this card along with you which will certify that you are a member of the parish.

"Respectfully,
(Signed) "ANTHONY HORBAL,
"Secretary."

In a stipulation filed in the instant case, it is agreed that the meeting was a friendly one, and that harmony prevailed. It appears now, however, that it may have been only a temporary armistice. A resolution was passed at the meeting authorizing defendant's officers to execute a mortgage on the church property to secure the payment of a note in the sum of $9,664.82, representing the sums due to various members of the church who had advanced moneys to it. In order to facilitate liquidation, the creditors entered into a trust instrument whereby they appointed Anthony Horbal, John Komarynski, and Alex Zdankewich to act as trustees for them and to take the mortgage security from the church corporation, with authority to collect and apportion the proceeds among them. The latter was a second mortgage subject to the first lien hereinbefore mentioned. Default having been made, Anthony Horbal and John Komarynski, individually and as trustees, filed the bill in the instant case to foreclose the mortgages, and asked that the property be sold to satisfy the two liens and the judgments to which we have referred. The defendant in its answer claims that the first mortgage was improperly authorized by a vote of the parties who were not regular members of the church, that the mortgage to the trustees was an *ultra vires* act of the corporation and represents an amount far in excess of the actual sum due the creditors secured thereby, and that the judgments were likewise irregular. The circuit judge in the instant case properly found that the first mortgage under the Nelson decree was duly assigned to Chuchman and Baran. Even were there any merit to defendant's contention, the decree in case No. 160,099, *supra,* has become *res judicata.* It is also unnecessary to consider the validity of the judgments which the trial judge found were improp-

erly taken and which have since been set aside. We do not believe, however, that the trial judge was correct in finding that the mortgage given to the trustees was a valid lien. He also found that the amounts claimed were due and owing to the various creditors for whom plaintiffs are acting as trustees. The testimony offered by defendant to show that such amounts were incorrect is so meager that, were it not that the mortgage must be set aside, defendant would be foreclosed from questioning the correctness of these amounts. The only question we believe it is necessary to determine at the present time is whether the execution of the mortgage was properly authorized.

Section 10112, 2 Comp. Laws 1929, provides that the by-laws of ecclesiastical corporations may prescribe:

"The manner and condition under which property, both real and personal, may be acquired, held and disposed of."

Section 10115, 2 Comp. Laws 1929, provides that an ecclesiastical corporation may mortgage and incumber its real estate,

"*Provided,* That the right to sell, convey or mortgage such real property shall be subject to such restrictions and conditions as may be prescribed by the rules of discipline, articles or by-laws pertaining to each such corporation."

The by-laws of defendant are, unfortunately, silent in regard to any provision regarding the authority to execute mortgages. We quote the only provisions in any way relating to the subject.

Article 5, § 2. "The board of trustees shall meet monthly or as often as necessary and shall conduct

the business of the church by a majority vote of those present."

Article 7, § 2. "All deeds of conveyance, mortgages, bills of sale and all other contracts shall be signed by the president, secretary and treasurer."

Article 8, § 1. "The regular monthly meetings and special meetings shall be called by the president or by any three members of the board of trustees upon giving at least seven days' notice thereof to the trustees."

Article 8, § 2. "Annual meetings shall be held in the city of Detroit, Michigan, in the month of April, on such a day and in such place as shall be designated by the board of trustees and announced by the pastor of the church."

Article 8, § 3. "One-third of all the male members of the church, of legal age, shall constitute the quorum for the transaction of business and election of officers."

Except for the annual meeting of the parishioners, provided for in section 2 of article 8, there seems to be no other provision for holding parish meetings. Clearly, the language of section 1 of this article refers only to meetings of trustees and precludes the possibility that it could refer to parish meetings, inasmuch as it only provides for notice to the trustees and impliedly refers to the trustees' meetings provided for in article 5, § 2. The by-laws do not confer on the parishioners any power with respect to mortgaging the property of the corporation, nor is there any provision for such a special meeting as was held on October 21, 1927. At most, the meeting was a meeting of the parish and not of the trustees. The mortgage, although signed by the proper officers, was not authorized by the board of trustees, and appears to be a nullity for that reason.

It is apparent from the notice of the meeting hereinbefore set forth that no reference of any kind was

made to the fact that it was to be held for the purpose of mortgaging the church property. While it asked the members to come to the meeting, as "the matter is very important," yet, because of the continuous difficulties in which the church was involved, we can readily see that there were so many "important matters" constantly demanding the attention of the parishioners that the notice itself gave no indication of the object of the meeting. A statement of the purpose of a special meeting in the notice thereof is usually required by the by-laws, but an express provision to that effect is not necessary. Notice of such meetings must generally contain a statement of the purpose, especially when business of an unusual nature is to be transacted. The failure of the by-laws to require specifically that the purpose of a special meeting must be stated in the notice does not obviate the necessity of such statement. 5 Fletcher, Cyclopedia of Corporations (Perm. Ed.), p. 49. The modern trend of authority is that the purpose of such a meeting must be stated. *Des Moines Life & Annuity Co.* v. *Midland Ins. Co.,* 6 Fed. (2d) 228; *Bagley* v. *Reno Oil Co.,* 201 Pa. 78 (50 Atl. 760, 56 L. R. A. 184); *Johnson* v. *Tribune-Herald Co.,* 155 Ga. 204 (116 S. E. 810).

At common law it was required that notice of meetings for any special and exceptional purpose state the object of the call. *Tuttle* v. *Railroad Co.,* 35 Mich. 247. Some decisions hold that there is less formality required in calling meetings of ecclesiastical corporations than of those formed for business purposes. See *Hubbard* v. *German Catholic Congregation,* 34 Iowa, 31; *Applequist* v. *Swedish Evangelical Lutheran G. Church,* 154 Wash. 351 (282 Pac. 224). However, even had the notice been regular, the query arises whether, under the statutes and by-laws quoted, the power to give the

mortgage was not vested solely in the trustees acting in such capacity.

A somewhat similar question arose in *People's Bank* v. *St. Anthony's R. C. Church,* 109 N. Y. 512 (17 N. E. 408), defendant claiming that notes supposedly made by the church were not signed by the authority of the trustees. In sustaining this contention, the court said:   ·

"It is elementary that the powers vested in a corporation aggregate, having a board of trustees, reside, for all purposes of practical administration, in the board as the governing body. The corporation being a legal entity merely, can only act through instrumentalities and by delegation. The statutes creating it may describe its mode of action, and when the methods and agencies by which it may act are designated, that designation operates as a limitation and excludes other modes of action. The general powers of religious corporations are enu-. merated in the fourth section of the act of 1813. They are in form conferred upon the trustees. The section authorizes and empowers the 'trustees' to exercise the powers specified, and by the closing paragraph empowers them to regulate and order 'all other matters and things relating to the temporal concerns and revenues of such church.' The trustees of the defendant were, therefore, the only legal representatives of the corporation in exercising its corporate franchises and powers. Whatever powers were conferred on the corporation may be exercised in its behalf by the trustees. They, acting as a board, can make or authorize acts binding on the corporation, and they alone. Their sanction or authority is essential to a valid corporate act. The qualification that the collective authority of the trustees acting as a board is essential in order to bind the corporation by the action of its trustees, is a recognized doctrine of the law of corporations.

The trustees of a corporation have no separate or individual authority to bind the corporation, and this although the majority or the whole number, acting singly and not collectively as a board, should assent to the particular transaction.''

In accord: *Columbia Bank* v. *Gospel Tabernacle Church,* 127 N. Y. 361 (28 N. E. 29). In *Cammeyer* v. *United German Lutheran Churches,* 2 Sandf. Ch. (N. Y.) 186, 228, the opinion states:

''I am perfectly satisfied that there was *no corporate act* of the defendants in relation to the building of St. Matthew's. The resolutions  *  *  *  were the acts of a conference of the United Churches,  *  *  *  which, by their ordinances then in force, consisted of the minister, three elders and six deacons, convened in a mass meeting with the nine trustees. The trustees did not act as such in a conference meeting.  *  *  *

''The fact that a majority of the trustees were present, acting as a council, does not make the resolutions of the council the act of the board of trustees.''

The claim is made that, if all parishioners and trustees were present at the meeting, the defendant should be estopped from denying the validity of the authorization of the mortgage. The testimony shows that many of the parishioners were absent from the meeting of October 21, 1927. It was claimed that 115 notices were mailed. One witness testified that 20 parishioners were present, while another places the number at 100. There is no claim that all of them were present. Under the particular circumstances, estoppel should not be raised against defendant when the action did not meet with the consent of all of its parishioners.

It is further claimed, however, that all the trustees were present at the parish meeting, and, therefore, defendant is estopped on this account from denying the validity of the mortgage, since it was authorized by the trustees. It has been held repeatedly that where an act may be performed only in pursuance of a resolution or authority of the board of directors, it can only bind the corporation when the board has acted thereon at a legal meeting as a board. *Cammeyer* v. *United German Lutheran Churches, supra; Conro* v. *Port Henry Iron Co.,* 12 Barb. (N. Y.) 27, 63. In *Landers* v. *Frank Street M. E. Church,* 114 N. Y. 626 (21 N. E. 420), in a suit on a salary claim by a minister, it was shown that the salary had not been fixed by the majority of the members and a majority of the trustees of the church as required by law. It was held that:

"The action of those who were trustees was not official, but personal in its character. Where the exercise of corporate acts is vested in a select body, an act done by the persons composing that body, in a meeting of all the corporators, is not a valid corporate act."

Inasmuch as there was no separate meeting of the board of trustees, in which authority was given to execute the mortgage, we must hold it invalid. It must be borne in mind that the mortgage was taken for antecedent debts by parties who were or should have been familiar with all of the transactions preceding the giving of the mortgage, and they cannot, therefore, claim the status of an innocent purchaser.

The further claim is made that Alex Zdankewich, one of the trustees, who was made a codefendant in the instant case, refused to act with the trustees in protecting the interests of his *cestuis*. It was proper for plaintiffs to make him party defendant. *Caylor*

v. *Cooper,* 165 Fed. 757, 762; *Dahl* v. *Levenberg,* 172 App. Div. 919 (157 N. Y. Supp. 14).

Under the circumstances, we must hold that the mortgage was not properly authorized, and, for that reason, null and void. It is set aside in accordance with the prayer of defendant's cross-bill, and a decree may be entered accordingly. Defendant will recover costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.