[No. 18244. Department One. December 13, 1923.]

S. STUSSER *et al., Appellants,* v. MUTUAL UNION INSURANCE COMPANY, *Respondent.*[1]

JUDGMENT (270)—RELEASE (6)—JOINT TORT FEASORS—EFFECT OF PARTIAL SATISFACTION OF JUDGMENT. After judgment against joint tort feasors, a partial satisfaction of the judgment to the extent of a collection thereon from a garnishee of one of the defendants, does not discharge or release the other defendant as to any balance that may be due on the judgment.

INDEMNITY (1) — INSURANCE (122) — INDEMNITY INSURANCE—POLICY—CONSTRUCTION. A surety bond, given by a compensated insurance company, on behalf of the operator of an automobile stage owner, as principal, for the expressed purpose of indemnifying the public against the negligent acts of the principal, construed most strongly against the surety, may be considered a conventional insurance contract rather than a surety bond.

INSURANCE (122)—INDEMNITY INSURANCE—POLICY INURING TO BENEFIT OF THIRD PERSONS—PRIVITY OF CONTRACT. An action on a surety bond in the nature of a policy of indemnity insurance, for the expressed purpose of indemnifying the public against the negligence of the principal in the bond, may be brought by a person injured by such negligence, and is not subject to the objection that there was no privity of contract.

[1]Reported in 221 Pac. 331.

INTERPLEADER (1)—BY SURETY—CLAIMS AGAINST BOND—DENIAL. OF LIABILITY. An indemnified insurance company, insuring the public against the negligence of the principal in a so-called surety bond, cannot defend an action on the bond on the ground that other claims are being made and that it is a mere stake holder for all claimants who must be brought in, where it is resisting and defending against all the claims.

Appeal from a judgment of the superior court for King county, Ronald, J., entered December 18, 1922, upon findings in favor of the defendant, in an action on contract, tried to the court. Reversed.

*Bausman, Oldham, Bullitt & Eggerman,* and *Walter L. Nossaman,* for appellants.

*Poe, Falknor & Falknor,* for respondent.

PARKER, J.—The plaintiffs, Stusser and wife, seek recovery from the defendant insurance company upon a so-called "surety bond", which, however, seems to be more in the nature of an insurance policy executed by the insurance company for the benefit of persons who might be damaged as the result of the operation by Louis C. Smith of a passenger-for-hire motor propelled vehicle upon the public highways of this state. The cause proceeded to trial upon the merits in the superior court for King county, sitting without a jury, and resulted in the making of findings and the rendering of judgment thereon denying to the plaintiffs any relief; from which they have appealed to this court.

The bond sued upon was executed in form by Smith as principal and the defendant insurance company as surety, and reads as follows:

"Supplemental Surety Bond
of the
"Mutual Union Insurance Company
"Know all men by these presents:
"That we, Louis C. Smith, of the city of Seattle, state of Washington, a member of the Mutual Union

Insurance Company, as principal, and the Mutual Union Insurance Company, a corporation, organized and existing under the laws of the state of Washington, and authorized to conduct a surety business in the state of Washington under the laws thereof, as surety, are held and firmly bound unto the state of Washington in the just, full, and aggregate sum of Twenty-five hundred ($2,500) dollars lawful money of the United States of America, for the payment of which well and truly to be made, we do hereby bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

"Signed, sealed and dated this 7th day of August, 1920.

"Whereas, the said principal is duly authorized to engage in the business of carrying and transporting passengers for hire in a motor propelled vehicle, described as follows, to wit:

"Make Locomobile.   Motor No. 9200.   Seating capacity 18

"And, whereas, said principal desires to protect the public against any careless or negligent act on the part of himself, his agents or employes while transporting passengers for hire in the above named vehicle upon the public streets, roads, or highways of the state of Washington not within the limits of a city of the first class, by which any person or persons may be injured, to the aggregate amount for all persons injured of Twenty-five hundred dollars;

"Now, therefore, the condition of this obligation is such that if the said principal shall pay all damages to the aggregate sum of Twenty-five hundred dollars ($2,500), which may be sustained by any person or persons injured by reason of any careless or negligent act on the part of said principal, his agents or employees while transporting passengers for hire over or along any public street, road or highway in the state of Washington, not within the limits of a city of the first class, then this obligation to be void; otherwise to remain in full force and effect."

Smith paid to the insurance company $35 premium as compensation for the execution of the bond, and it

was in full force and effect at the time in question. On March 20, 1921, appellants were passengers on Smith's automobile stage described in the bond, while being operated for hire by him upon a public highway of the state between Seattle and Tacoma, when appellants were both injured in a collision occurring between the stage and a truck as the result of the concurring negligence of the operators of both. Thereafter appellants sued Smith and the owners of the truck as joint tort feasors, seeking recovery for such injuries, and were on December 12, 1921, awarded judgment against all of them as joint tort feasors, in the superior court for Pierce county, in the sum of $7,500, and costs taxed at $116.80. Thereafter execution was issued upon the judgment and returned wholly unsatisfied. No part of the judgment has ever been paid by Smith, and no part of it has ever been paid by anyone, except that the Maryland Casualty Company, a debtor of the owners of the truck, as garnishee defendant in that action, has paid a sum in consideration of which appellants executed a release satisfying the judgment as against the owners of the truck to the extent of $5,366.80 and no more, leaving the remaining portion of the amount of the judgment wholly unsatisfied, both as against Smith and as against the owners of the truck. The trial court found these facts, as to which there can be no serious controversy, and concluded therefrom as a matter of law:

"That by virtue of the satisfaction of said judgment by the co-defendants Tom Rawson, Neil Rawson and N. Younkers [owners of the truck] to the amount of $5366.80, said Rawsons and Younkers being joint tort feasors with the defendant L. C. Smith, the defendant L. C. Smith was released to the extent of $5366.80 and that said bond sued on herein being only in the aggregate sum of $2500.00, upon the satisfaction of

said judgment to the amount of $5366.80 became null and void by operation of law.''

While it has become the settled law in this state, in harmony with the generally prevailing rule elsewhere, that an entire release by the injured party of one or more joint tort feasors from liability entirely releases all the other joint tort feasors, though it be stipulated between such expressly released joint tort feasors and the injured party that such release shall not have the effect of releasing other joint tort feasors; *Abb v. Northern Pac. R. Co.*, 28 Wash. 428, 68 Pac. 954, 92 Am. St. 864, 58 L. R. A. 293; *Larson v. Anderson,* 108 Wash. 157, 182 Pac. 957, 6 A. L. R. 621; it seems to us that it is also a well settled, general rule of law that a partial release by the injured party of one or more joint tort feasors has no greater effect than releasing the other joint tort feasors *pro tanto,* and that to whatever extent such expressly released joint tort feasors remain liable to the injured party, so will the other joint tort feasors remain liable to the injured party. There are decisions seeming to recognize exceptions to this general rule, but where the amount of the injured party's damages, as against all the joint tort feasors, has become fixed by judgment before the execution of such partial release, as in this case, no exception to this general rule obtains. 23 R. C. L. 405.

Counsel for the insurance company seem to rely upon our decision in *Larson v. Anderson,* 108 Wash. 157, 182 Pac. 957, 92 Am. St. 864, 58 L. R. A. 293, as lending support to their contention that the acceptance of payment from the owners of the truck, and the release of the judgment as against them to the extent of $5,366.80 by appellants, was, in legal effect, an entire release and satisfaction of the judgment as against the insurance company. But the argument, we

think, overlooks the fact that that was only a partial release and satisfaction of the judgment as against the owners of the truck; they remaining still bound to pay the judgment in so far as it remained unsatisfied. In *Larson v. Anderson, supra,* we have the somewhat unusual situation of joint tort feasors being sued separately for the commission of the same tort; judgments being rendered in the separate actions for different sums, that is, different juries finding damages in different amounts for the same tort. It was held that the receipt in full by the plaintiff of the amount of one of these judgments was necessarily a full satisfaction of the other, even though the judgment so expressly satisfied was the smaller in amount. That decision was but a recognition of the principle that the injured party could have but one recovery for the injury suffered from the joint act of any number of joint tort feasors.

The decision of the learned trial court, as evidenced by its conclusion of law above quoted, and the argument of counsel for the insurance company, seem to rest principally upon the theory that, since appellants have received more than $2,500, the amount of the bond, upon their judgment against Smith and the owners of the truck as joint tort feasors, appellants have therefore received the full amount for which the bond indemnified them. We think one answer to this argument is found in the fact that Smith has never paid, or caused to be paid, any sum whatever upon the judgment to appellants, and the express language of the bond is that ''said principal [Smith] shall pay all damages to the aggregate sum of Twenty-five hundred dollars ($2,500), which may be sustained by any person or persons injured . . .'' This, it seems to us, is a direct promise that Smith, and in turn the insurance

company, shall pay not exceeding $2,500, in any event; and that as long as there remain damages due to appellants in any sum up to $2,500, Smith, and in turn the insurance company, are liable therefor to whatever extent they, or either of them, have not paid $2,500. Their liability, we think, is not dependent upon what someone else pays or fails to pay to appellants, except in so far as any such payments may reduce the sum due the injured party as damages below the sum of $2,500. Of course, neither Smith nor the insurance company are required to pay more than actual damages suffered by appellants, nor more than $2,500 of such damages; but we are convinced that Smith, and in turn the insurance company, are by the terms of the bond required to pay not exceeding $2,500 towards any portion of the damages not paid by others.

The insurance company is a compensated surety. Indeed, we think it falls little short of being a compensated insurer in the conventional sense, in view of the fact that it executed this so-called "surety bond" manifestly for the benefit of persons who might be injured as appellants were. Appellants may well be called the insured and the insurance company the insurer, though the document evidencing this relation be called a "surety bond." Elementary rules of construction of indemnity contracts of this nature, prepared by the indemnitor in stereotyped form, as this contract manifestly was prepared by the insurance company, call for a construction most strongly against the indemnitor. Our decisions in *Montana Stables v. Union Assur. Soc.*, 53 Wash. 274, 101 Pac. 882; *Algoe v. Pacific Mutual Life Ins. Co.*, 91 Wash. 324, 157 Pac. 993; and *Mountain Timber Co. v. Lumber Ins. Co.*, 99 Wash. 243, 169 Pac. 591, lend strong support to this conclusion, though the contracts involved in those

cases were, in form, conventional insurance contracts.

Some contention is made in behalf of the insurance company rested upon the theory that the want of privity of contract between it and appellants stands in the way of appellants being awarded recovery against it in this case. We think, in view of the manifest purpose of the insurance company in issuing this so-called "surety bond" for the benefit of people who might be injured as appellants were, as evidenced by the terms of the bond, it is rendered plain that appellants have the right to sue and recover thereon. *Finkelberg v. Continental Casualty Co.*, 126 Wash. 543, 219 Pac. 12; *Clatsop County v. Feldschau*, 99 Ore. 680, 199 Pac. 953, 18 A. L. R. 1221.

Some contention is made in behalf of the insurance company, though but briefly argued, that it should not be held liable in this particular action because, as alleged in its complaint and found by the trial court, in substance, others are making claims against it upon this same bond because of having received injuries in the same accident; the insurance company, however, denying all liability to such other parties, as well as denying all liability to appellants. In other words, the insurance company does not stand indifferent as a disinterested stake holder as between appellants and other alleged claimants under the bond, but it stands in pronounced antagonism, resisting the claims of all persons made under the bond. The learned trial court manifestly gave this defense made by the insurance company no consideration, evidently deeming it unnecessary to do so in view of its decision being rested upon other grounds which we have already noticed. However, we think the position of counsel for the insurance company on this branch of the case is wholly untenable. In 15 R. C. L. 226, the law is well stated as follows:

"It is of the essence of an interpleader suit that the plaintiff should be entirely indifferent between the conflicting claims, asserting no interest in himself in the fund in dispute. An attitude of perfect disinterestedness, excluding even an indirect interest, on the part of the plaintiff is indispensable to the maintenance of the bill, and his position must be one of 'continuous impartiality,' save that the thing in his possession be awarded to the right party. When, therefore, the plaintiff denies his liability for part of the claim of one of the contestants he cannot have a bill of interpleader."

The supreme court of Missouri, in *Pope v. Missouri Pac. R. Co.*, 175 S. W. (Mo.) 955, dealt with a similar problem. There was drawn in question in that case an appearance by the defendant which was, in effect, a plea in abatement rested upon an allegation that the damages sued for were claimed by another; and also a motion seeking to bring such other claimant in as plaintiff; the railway company, however, asserting its non-liability to anyone. Holding that the railway company could not thus reap benefits as an interpleader, Justice Blair, speaking for the court, observed:

"An impartial, disinterested stakeholder, acting in good faith, and having reasonable cause for a real doubt as to which of certain claimants is entitled to a fund in his hands or to a debt or duty owed by him, may ordinarily, if he fears injury from conflicting claims, bring the claimants into court and require them to litigate their conflicting rights to the thing concededly due one of them. *Little v. Union Trust Co.*, 197 Mo. loc. cit. 291, 94 S. W. 890. It is settled law that if, in such a proceeding, the amount due is in dispute between plaintiff and defendant or either of them, the bill cannot be maintained. *Glasner v. Weisberg*, 43 Mo. App. loc. cit. 219. That defendant could not, on the showing made in the motion, maintain such a proceeding by motion, bill, or otherwise, is apparent. The motion itself denies all liability, and consequently

denies the existence of any fund concededly due for which the claimants could have litigated, had the administrator been brought in. The motion disclosed that defendant's object was to continue to participate in all further proceedings and to defend against any liability to either claimant, meanwhile embroiling them with each other.

. ''No case is cited authorizing a tort-feasor to require persons, each claiming the sole right to damages for the same tort, simultaneously to litigate with it the question of its liability and, with each other, their conflicting claims. The remarkable situation which would result would be far more productive of injustice than it will be to require defendant to take his chances on two juries coming to the same conclusion on the facts. The doctrine invoked has no possible application to facts like those set up in the motion.

''What has been said disposes of the ruling on the administrator's 'entry of appearance and plea in abatement,' so far as concerns defendant's right to complain of that ruling, . . .''

We see nothing in our statute relating to interpleading (§§ 198-201, Rem. Comp. Stat.) [P. C. §§ 8279, 8284], calling for the application of the law different from that above cited and quoted.

We conclude that the judgment of the superior court denying to appellants all relief must be reversed. It is so ordered, and the cause remanded to that court with directions to award to appellants a judgment against the insurance company upon the bond for whatever amount of appellants' judgment against Smith and the owners of the truck remains unsatisfied, not exceeding $2,500.

. Main, C. J., Holcomb, Tolman, and Mackintosh, JJ., concur.