[No. 28028.   Department One.   September 4, 1941.]

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY,
*Respondent,* v. FIREMAN'S FUND INSURANCE
COMPANY, *Appellant.*[1]

[1]Reported in 116 P. (2d) 539.

*Roy A. Redfield,* for appellant.

*Ott & Cross* and *Lawrence H. Brown,* for respondent.

ROBINSON, C. J.—On October 11, 1938, a machine shed, located on a Lincoln county farm, was totally destroyed by an accidental fire. The building was insured against fire loss through two insurance policies issued by Fireman's Fund Insurance Company. On March 9, 1939, it denied liability, and this action on the policies was brought against it by John Hancock Mutual Life Insurance Company. The trial court entered judgment for one thousand dollars, the full amount of the policies. The insurance company has appealed.

While there is but little dispute as to the facts, they are somewhat complicated. Clarity will, perhaps, be best achieved by stating them in chronological order.

In 1922, Edward Gooley and wife, the then owners of the farm upon which the shed was located, mortgaged the premises to secure the sum of twenty thousand dollars. This mortgage subsequently became the property of the respondent, hereinafter referred to as the Hancock company.

In February, 1932, the Hancock company instituted foreclosure of the mortgage and received a sheriff's deed in April, 1933. In 1936, it sold the premises to J. C. Schmauder by executory contract, reserving title until full payment and requiring the purchasers to insure the premises, loss payable to vendor in an amount not exceeding the balance due on the purchase price. The vendee's attorneys questioned the title of the Hancock company, and it filed a suit against the Gooleys to quiet title on February 10, 1937.

On Schmauder's application, the first policy in suit was issued on February 15, 1937, loss payable to vendor, not exceeding the balance due on the sale contract at time of loss, balance, if any, to vendee.

Subsequently, the Hancock company prevailed in the action to quiet title, and the Gooleys appealed. While the appeal was pending in this court and before decision was rendered, the second policy, with similar provisions, was issued on September 14, 1938. The application for this policy contains a list of questions headed: "Questions to be Answered by Agent," followed by a space for "Remarks." Under that heading, appellant's agent wrote:

"The John Hancock Mutual Life Ins. Co., the vendors, are in litigation with a former owner. Matter now in Supreme Court."

The applicant for the policy was also required to answer certain questions in writing, and among them: "Is property in litigation or dispute?" To this question, he answered: "See Remarks."

On October 3, 1938, this court, by an *En Banc* decision, reversed the holding of the Lincoln county court, and held that the foreclosure against the Gooleys was without jurisdiction and that the resultant deed to the Hancock company was, therefore, void. *John Hancock Mutual Life Ins. Co. v. Gooley*, 196 Wash. 357, 83 P. (2d) 221, 118 A. L. R. 1484. There having been no previous departmental decision in the cause, the decision did not become final until a lapse of thirty days. Rem. Rev. Stat., § 11 [P. C. § 8656].

The machine shed burned on October 11, 1938, during that thirty-day period. The remittitur was filed in the superior court of Lincoln county on November 7. The voiding of the foreclosure deed established the fact that the Hancock company had never owned the property. Since, however, it had exercised all the rights of ownership for more than five years, there was considerable unscrambling to be done. An accounting was held between the Hancock company and the Gooleys in the foreclosure case, the Gooleys

claiming credit for the proceeds of the land while in the Hancock company's possession, and, with respect to various other matters and among other sums, two thousand dollars for the value of the destroyed machine shed. As to that item, an agreement was reached out of court. On November 22, 1938, the Hancock company's loan agent wrote to Messrs. Ott & Cross, the attorneys for the Gooleys, as follows:

"I write you regarding the insurance on the machine shed on the Gooley place, the machine shed having been destroyed by fire some weeks ago, and this letter is in confirmation of the oral understanding of Counsel at Davenport yesterday at the trial of the accounting.

"Mr. Schmauder took out two insurance policies of $500.00 each on the machine shed in question. These policies named the John Hancock Mutual Life Insurance Company as principal beneficiary with a contract of sale clause to Mr. Schmauder. Our understanding is that in view of this letter you will not put in any testimony as to the value of the machine shed, and in consideration of this we agree that if, as, and when the fire insurance company pays this loss to us, and providing your clients, the Gooleys, have paid in full the redemption provided by final decree, we will, if and when the insurance money is received, pay it over to your clients, or to you. We shall be glad to be of any possible assistance to you in collecting from the insurance company, and should the fire insurance company refuse payment, suit may be maintained by you in the name of the John Hancock Mutual Life Insurance Company, but at your own expense and with no liability on the part of the John Hancock Mutual Life Insurance Company for the outcome of said suit, and you are to keep us indemnified for any costs, expense or judgment in the matter."

As a result of the accounting, the court found that the Gooleys owed the Hancock company $25,119.80, which they were directed to pay into the registry of the court on or before the 20th day of February, 1939,

plus interest from the date of the decree, in which case title would be quieted in the Gooleys; that, if they failed to make the payment on or before the date fixed, title would be quieted in the Hancock company. The Gooleys made the payment, and the court entered a final decree on January 30, 1939, quieting title in the Gooleys.

No proofs of loss under the insurance policies were ever filed. On March 9, 1939, the insurance company waived the filing of proofs of loss and brought the matter to a head by formally denying liability. On the following March 21st, its agent wrote to Mr. Schmauder who had taken out the policies:

"At request of the Fireman's Fund Insurance Company I enclose my certified check No. 1928 for $70.47, amount of unearned premiums from October 3rd last on their policies Nos. 685118 and 704768 issued to you through my office in Davenport."

Some months later, as we understand the record, the respondent tendered the full amount of the premiums into court.

At the trial of the action, the appellant relied largely upon a plea of constructive fraud in procuring the policy. In this court, in attacking the judgment, the appellant relies upon a line of argument which may, perhaps, be best indicated by direct citation from some of the decisions cited in its support. We quote from *Draper v. Delaware State Grange Mutual Fire Ins. Co.*, 28 Del. 143, 91 Atl. 206:

"A contract of insurance is essentially a personal contract. *Traders' Ins. Co. v. Newman*, 120 Ind. 544, 22 N. E. 428. It is not a contract to insure property against fire, but is one to insure the owner of property against loss by fire. Destruction by fire of the property described in the contract of insurance is not the contingency upon which the insurer promises to indemnify the insured. *It is only when by fire the insured has sustained a loss that the insurer may be*

*called upon to perform its contract of indemnity."* (Italics ours.)

The next rule of law invoked is stated in 26 C. J. 453, § 615, as follows:

"As the contract of insurance is for indemnity, if the insured receives satisfaction or part satisfaction for his loss from another source, as for instance from a wrongdoer who has caused the loss, or from other insurance, the amount so received will be applied in full or partial discharge of the policy."

This is supported by a quotation from *Chicago, St. Louis & New Orleans R. Co. v. Pullman Southern Car Co.*, 139 U. S. 79, 88, 35 L. Ed. 970, 11 S. Ct. 490:

"The principle is thus stated by Lord Blackburn in *Burnand v. Rodocanachi*, 7 App. Cas. 333, 339: 'The general rule of law (and it is obvious justice) is, that where there is a contract of indemnity (it matters not whether it is a marine policy, or a policy against fire on land, or any other contract of indemnity) and a loss happens, anything which reduces or diminishes that loss reduces or diminishes the amount which the indemnifier is bound to pay; and if the indemnifier has already paid it, then, if anything which diminishes the loss comes into the hands of the person to whom he has paid it, it becomes an equity that the person who has already paid the full indemnity is entitled to be recouped, by having that amount back.' "

As illustrative of the application of the rule, *Larner v. Commercial Union Assur. Co.*, 215 N. Y. Supp. 151, is cited. In this case, a lessee had procured fire insurance on his own improvements upon the leased property. By the terms of the lease, the lessor was obligated to repair the premises if damaged by fire. Fire occurred, and the lessor repaired the premises, including the improvements installed by the lessee. In an action brought by the lessee on his policy of insurance, the court said:

"There is no dispute here but that the lessee did have an insurable interest in the betterments and addi-

tions, and thus might take out a policy of fire insurance indemnifying him against loss by fire. Neither is there any dispute as to the amount of damage done by the fire. The claim of the defendant is, however, that since the lessor has replaced the betterments and additions, *and this was done before the policy in question became payable,* the lessee has not suffered any loss recoverable under his policy." (Italics ours.)

[NOTE: In the instant case full redemption of the mortgage was made before the policies became payable, since by their terms they did not become so until sixty days after filing of proofs of loss.]

"In view of my conclusion, it is not necessary to determine precisely what interest in the betterments and improvements was insured. Since the betterments and improvements have been restored under the circumstances disclosed here, the insured has not suffered any loss coming within the terms of the policy, whether it is construed to insure the specific property, or the interest of the lessee in its use during the period of the lease."

Other cases are cited, among them, *Pentz v. Receivers,* 9 Paige's Chancery Reports (N. Y.), 568. In this case, buildings were dynamited in order to stop the progress of the fire. By statute, the owner was entitled to compensation from the city. He pursued his statutory remedy, and at the same time demanded full payment from the insurance company. The court held that the insurance company was liable only for the loss remaining after crediting the recovery from the city. See, also, *Aetna Ins. Co. v. Hann,* 196 Ala. 234, 72 So. 48; *Chickasaw County Farmers' Mutual Fire Ins. Co. v. Weller,* 98 Iowa 731, 68 N. W. 443; *Kennedy Bros. v. Iowa State Ins. Co.,* 119 Iowa 29, 91 N. W. 831.

In brief, the appellant contends (1) that, at the time of the fire, the interest of the Hancock company in the property destroyed was, at most, only that of a mortgagee; (2) that it had, previous to the bringing

of this action and before the policies became payable, received every penny due on its mortgage through its redemption made the previous January; and (3) that, since a fire insurance contract is one of personal indemnity only, the action should have been dismissed.

Since, in the case of *John Hancock Mutual Life Ins. Co. v. Gooley, supra,* we held the foreclosure proceedings void for want of jurisdiction, the resulting deed was, of course, void, and the Hancock company was at no time anything more than a mortgagee. That, upon the redemption, it received the entire amount of its mortgage and, therefore, ultimately suffered no loss is equally beyond dispute. It says, however, that (1), as of the time of the fire, it did suffer a loss, in that its security was impaired; and that (2) the liability of the appellant then became fixed, and that it was, therefore, at liberty to so deal with it in the accounting, when, in effect, it used it as a set-off against the Gooley claim for the value of the shed.

In answer to appellant's argument and to sustain its own affirmative contentions, the respondent relies largely upon the case of *Gattavara v. General Insurance Co.,* 166 Wash. 691, 8 P. (2d) 421. Gattavara had a mortgage on a truck belonging to one Schaide. Gattavara took out an insurance policy. In the policy, he was, by mistake of the insurer, described as owner. The case was, however, decided on the theory that he was, in fact, a mortgagee. The truck was destroyed in a collision on July 5, 1929. On the following September 10th, Gattavara brought an action to foreclose his mortgage. On the following September 23rd, Gattavara and Schaide arrived at a settlement, as a result of which Gattavara dismissed the foreclosure action, with prejudice, on September 28th. In making the settlement, Gattavara gave Schaide credit for the amount that he expected to recover on the insurance

policy. The action was to recover that amount. On appeal, the court said, in part:

"The appellant next contends that the court erred in denying its motion for judgment notwithstanding the verdict, and in refusing to grant its motion for a new trial. In support of this contention, the appellant argues that the mortgage debt became extinguished on September 28, 1929, at the time the respondent dismissed, with prejudice, his action to foreclose the chattel mortgage against Schaide, and that respondent had no further interest in the policy. But it must be borne in mind that the truck was destroyed July 5, 1929. *The appellant's liability became fixed as of that date.* If the mortgage debt had become extinguished before the loss occurred, a different question would be presented. But the authorities generally hold that the insurer's liability is fixed as of the date when the loss occurs.

" 'Nor is there merit in the contention that the policy was terminated by the suit to foreclose the real estate mortgage. The breach of the policy, if any, had occurred long before such suit, and the rights of plaintiff thereunder had vested.' *Pennsylvania Fire Ins. Co. v. Johnson,* 28 Ariz. 448, 237 Pac. 634.

"Finally, the appellant contends that, if the judgment is allowed to stand, the respondent will reap double recovery—one against the appellant and the other against the mortgagor, Schaide. This argument, while engaging, is not persuasive. September 10, 1929, the respondent brought this action to foreclose the chattel mortgage against Schaide, and prayed for judgment in the sum of $13,659.12. On September 23, 1929, the respondent and Schaide entered into a written agreement of settlement adjusting all disputes or claims between them relating to various logging operations. At that time, Schaide owed the respondent approximately $13,000. When the truck was destroyed, the respondent's security was impaired to the extent of the value of the truck. In the settlement between the respondent and Schaide, the latter was given credit for whatever amount the respondent would recover against the appellant by reason of the destruc-

tion of the truck. Under these circumstances, there would be no double recovery." (Italics ours.)

Respondent cites a number of additional cases to support its contention that the liability of the insurance company was fixed at the time of the loss. *Pioneer Savings & Loan Co. v. Providence Washington Ins. Co.*, 17 Wash. 175, 49 Pac. 231, 38 L. R. A. 397; *Browne Nat. Bank v. Southern Ins. Co.*, 22 Wash. 379, 60 Pac. 1123; *Brown v. Northwestern Mutual Fire Ass'n*, 176 Wash. 693, 30 P. (2d) 640; *Bartling v. German Mutual Ins. Co.*, 123 N. W. (Iowa) 63; *Evans v. Crawford County Farmers' Mutual Fire Ins. Co.*, 130 Wis. 189, 109 N. W. 952, 118 Am. St. 1009, 9 L. R. A. (N. S.) 485; *Smith v. Grange Mutual Fire Ins. Co.*, 234 Mich. 119, 208 N. W. 145; *Ruby S. S. Corp. v. American Merchant Marine Ins. Co.*, 231 N. Y. Supp. 503 (affirmed, 250 N. Y. 573, 166 N. E. 329); *Crook v. Hartford Fire Ins. Co.*, 175 S. C. 42, 178 S. E. 254; *Hahn v. National American Fire Ins. Co.*, 233 Mo. App. 756, 127 S. W. (2d) 94; *National Fire Ins. Co. v. Finerty Inv. Co.*, 170 Okla. 44, 38 P. (2d) 496.

Appellant, in its reply brief, attempts to show, by analysis, that these cases are not in point, and contends that, even if such a liability is fixed at the time of the loss, it may be discharged before the loss becomes payable, pointing out that a payment by a *tortfeasor* subsequent to loss will reduce or completely eliminate the insurer's liability, *Stusser v. Mutual Union Ins. Co.*, 127 Wash. 449, 221 Pac. 331; or the release of a wrongdoer by the parties insured will operate as a defense for the insurance company otherwise liable, *Downs Farmers' Warehouse Ass'n v. Pioneer Mutual Ins. Ass'n*, 41 Wash. 372, 83 Pac. 423; and that the right to recover may be destroyed by a failure to make proof of loss, *Draper v. Aetna Life Ins. Co.*, 1 Wn. (2d) 17, 95 P. (2d) 28; or by refusing

to join in an appraisal, *Goldstein v. National Fire Ins. Co.*, 106 Wash. 346, 180 Pac. 409; or by false swearing in the proof of loss, 26 C. J. 382, § 492; or by refusing to furnish the magistrate's certificate when the same is demanded. See, *Egan v. Merchants' Fire Ass'n*, 40 Wash. 513, 82 Pac. 898. In the instant case, it is contended, conceding *arguendo* only that the liability became fixed at the time of the loss, that the liability was destroyed when the Hancock company's mortgage debt was fully paid.

The more the facts of the case are considered, the more it becomes apparent that the problem presented cannot be solved by the strict application of purely legal rules. There is no doubt but that the intention was to insure the full interest in the property, which was believed to rest in the Hancock company and Schmauder at the time the policies were rendered, but actually rested in the Gooleys and the Hancock company. As we have seen, at the time the second policy was applied for, the insurer was put on notice by the application, that the title might not be as represented in the application for the first policy, yet it wrote the second and attached it, by rider, to the first.

Furthermore, the defendant insurance company treated the policies as insuring the full interest in the property during the period up to October 3, 1938, by retaining the full premium covering that period up to the time of trial. If the full interest was covered during that time, it remained covered at the time of the fire, since the decision of this court, made on October 3rd, did not convert the Hancock company from an owner into a mortgagee, but merely declared that it had never been an owner and had at all times been a mortgagee. The insurer, of course, knew what

the true relationship was ·when it elected to retain the premiums.

■ Appellant now takes the position that only the mortgage debt was insured. We agree with the trial court that it waived and abandoned the right to do so, if it had such right, ·when, with full knowledge of the facts, it retained a portion of the premiums paid for a coverage on the entire interest. In so doing, it, in effect, ratified the policies as covering the entire interest, though only the mortgagee was named in the policy. The court which made the accounting between the Gooleys and the Hancock company charged the premiums to the Gooleys. The appellant questions its right to do this, but the court could not very well do otherwise, since it was stating an account between the Gooleys, as mortgagors, and the Hancock company, as mortgagee, and the mortgage ·contained the following provision:

"THIRD: That the said first parties shall keep the buildings on said premises insured in some responsible company or companies, approved by said second party, for the benefit of said second party, or its successors or assigns, in the sum of not less than SIX THOUSAND DOLLARS, and shall deliver the policies and renewal receipts to said second party, and should said first parties neglect so to do, the legal holder hereof may effect such insurance, and recover of said first parties the amount paid therefor, with interest at ten per cent per annum, and this Mortgage shall stand as security therefor."

Both the owner and the mortgagee would be beneficiaries under such policies. Vance on Insurance (2d ed.) 654; *Robbins v. Milwaukee Mechanics Ins. Co.,* 102 Wash. 539, 173 Pac. 634; *Stebbins v. Westchester Fire Ins. Co.,* 115 Wash. 623, 197 Pac. 913. And in the case of loss the insurance would stand as security for the mortgage debt in lieu of the property destroyed.

Let it be supposed that the Hancock company had

brought this action before the redemption, or that upon the redemption it had agreed to accept $24,119.80, instead of $25,119.80, and make itself whole by reserving the insurance to be collected for its own account. In neither case could the appellant have made the contention upon which it now stands. We cannot perceive that any prejudice resulted to the appellant from the fact that the parties settled the account between themselves in a slightly different way. They arrived at the same practical result. The situation differs in no material regard from that presented in the case of *Gattavara v. General Insurance Co.*, 166 Wash. 691, 8 P. (2d) 421.

Appellant contends that to affirm the judgment of the trial court is to enforce contracts against it for the benefit of parties with whom it had no intention whatever to contract. But at the same time the appellant urges us to decide the case in its favor by treating the instruments as contracts which no one intended to make; that is, contracts insuring the mortgagee's interest only. Manifestly, the parties, when they entered into the contracts, had no intention whatever of doing that, for they believed at the time that the mortgage debt had been extinguished by foreclosure. The parties who contracted intended to insure the whole interest, although they were in error as to the persons in whom that interest actually rested. The problem presented can only be resolved in the light of the acts of the parties after the true facts became known, or should have become known.

This court, in order to do equity, has heretofore adjudged, under circumstances very similar to those presented in this case, that an owner could recover for a loss, although not named in the policy of insurance. *Robbins v. Milwaukee Mechanics Ins. Co.,* *supra.* In that case, the respondent owner was not a

party to the insurance contract, and the insurance company never dealt with her in any way. Yet, the court said, in affirming the judgment which she secured against the insurance company in the lower court:

"It is argued, however, that there was no contractual relation between the respondent and the insurance company, and that the respondent has no interest in the policy and cannot recover thereunder. That the conditional bill of sale was of record is undisputed, and there is evidence tending to show that Mr. Goff, the agent who wrote the policy, had, or might have obtained, knowledge of the true condition. *However, that may be, the insurance company appears to have received its premium, the property was destroyed, and it ought not, in good conscience, to avoid paying the loss on a mere technicality.* The legal title to the property was in the respondent. L. N. Kempf, as vendee, had contracted to keep it insured to at least the extent of the unpaid purchase price, and his interest had passed to Casper Kempf with full knowledge of such condition. The property being destroyed, the insurance money stands in lieu thereof, and *it would seem equitable, under these conditions, for the court, if necessary, to order a reformation of the insurance policy so that it should protect the interest of the true owner of the property.*" (Italics ours.)

Finally, it is vigorously urged that the judgment permits a double recovery. If the judgment belonged to the respondent, there might be some merit to this contention, but it was pleaded and proven in this cause, and the appellant bases some of its contentions upon that very fact, that the Gooleys are the real parties in interest and that the proceeds of the judgment will be theirs. Furthermore, the appellant will be compelled to pay the loss but once. There is no double recovery.

The judgment appealed from is affirmed.

MAIN, MILLARD, SIMPSON, and BLAKE, JJ., concur.