[No. 32520. Department Two. January 14, 1954.]

STATE BANK OF WILBUR, *Plaintiff,* v. WILBUR MISSION CHURCH, W. A. KINCAID, *Appellant,* R. L. STONE *et al., Respondents.*[1]

[1] Reported in 265 P. (2d) 821.

*Ned W. Kimball* and *C. M. Clark,* for appellant.

*McCallum & Zellmer,* for respondents.

HAMLEY, J.—Two groups of people, each claiming to be the rightful trustees and officers of Wilbur Mission Church, asserted exclusive authority to withdraw church funds on deposit with State Bank of Wilbur. Confronted with these conflicting claims, the bank instituted this action in interpleader, naming the church and W. A. Kincaid, R. L. Stone, and Mabel M. Kitt as defendants. Plaintiff deposited with the clerk of the court the church funds, in the amount of $522.28, disclaimed any interest therein, and asked that defendants be required to interplead their respective claims.

A petition to intervene and a series of answers and cross-complaints were filed. As a result, an issue was drawn as to whether Kincaid, on the one hand, or Stone and interveners George Kitt and Carl Lome, on the other, were entitled to receive the funds for and on behalf of the church. The other defendant and the remaining eight interveners (an additional intervener withdrew prior to the trial) supported the position taken by Stone, George Kitt, and Lome. It was conceded by all parties that the funds were the property of the church.

The case was tried to the court without a jury. Judgment was entered to the effect that Stone, George Kitt, and Lome are the duly elected, qualified, and acting trustees of the church, and are entitled to receive the deposited funds on behalf of the church. Kincaid appeals.

Wilbur Mission Church is not affiliated with any other church, and is sovereign in its government and program. It was founded by Kincaid in 1940, and he has been pastor continuously since that time. In 1942, a lot was acquired, on which was located a building which had been used as a potato chip and candy factory. Through the voluntary efforts of Kincaid and members of the congregation, this structure was converted into a church building. Kincaid and his family occupy rent-free living quarters in this building.

In the summer of 1943, the church was incorporated under the laws of this state (RCW 24.08.010 *et seq.* [*cf.* Rem. Rev. Stat., § 3863 *et seq.*]) relating to the incorporation of educational, religious, benevolent, or charitable societies. The provisions of the articles relating to the government of the church are as follows:

"ARTICLE V. The affairs of this corporation shall be managed by a Board of Trustees, consisting of three members, and by officers elected by said Board of Trustees from the membership of this corporation. The said Board of Trustees shall be elected from the membership of this corporation, annually, or as prescribed by its By-laws which the members thereof shall adopt for the guidance and control of the Trustees and other officers. The annual meeting for the election of officers of this corporation shall be held on the first Thursday in January of each year.

"ARTICLE VI. The President and Secretary of this corporation shall execute, on behalf of this corporation, all deeds, mortgages and other instruments of conveyance of any real or personal property belonging to the corporation, if so directed by a majority of the Board of Trustees. Any vacancy in said Board may be filled until the next annual election, by the majority vote of the remaining Trustees.

"ARTICLE VII. The names of the first Trustees, with their addresses, who shall manage the affairs of this corporation until the first annual meeting, are:

| Name: | Address: |
|---|---|
| "W. A. KINCAID, | Wilbur, Washington |
| "R. L. STONE, | Almira, Washington |
| "JAKE STARKEL, | Almira, Washington |

"The following named persons shall serve as officers until the first annual election, and until their successors are elected and qualified:

| | |
|---|---|
| "President, W. A. KINCAID, | Wilbur, Washington |
| "Secretary, BERTHA STONE, | Almira, Washington" |

The original board of trustees continued to serve until 1947, when one of their number, Jake Starkel, died. At the annual meeting held on January 8, 1948, George Kitt was selected to fill this vacancy on the board of trustees. The board then consisted of Kincaid, Stone, and George Kitt, until November 30, 1950.

On the evening of November 30, 1950, the congregation held its regular prayer meeting, with which was combined

a Sunday School meeting. Seventeen persons were present. Near the close of the meeting, Kincaid gave a resume of the work of the church since its founding. He also outlined the policies of the church as to its evangelistic missionary activities and its program for evangelizing the community. Kincaid then asked those present to bow their heads and close their eyes, and, while in that position, for those who were willing to support him "one hundred percent" in the program he had outlined to raise their hands.

Kincaid did not close his own eyes and noted that three persons, including Stone and George Kitt, did not raise their hands. Kincaid thereupon announced that he was removing Stone as trustee and appointing Mrs. Kincaid in Stone's place. He also stated that he was removing George Kitt as trustee and appointing Mrs. Cecil Long to take his place.

During the next few days, Stone and George Kitt attempted to effect a reconciliation with Kincaid, but without avail. No annual meeting was held in January, 1951. On July 25, 1951, the bank was notified of the controversy in some manner not revealed in the record, and did not, after that date, honor checks drawn on the church funds. On Sunday, August 5, 1951, Kincaid announced from his pulpit that there would be a special business meeting on the evening of August 9, 1951. This is the way in which notice of meetings was customarily given, but the record does not indicate who, if anyone, was present to hear this announcement. No written or other notice was mailed, posted, or published, and Stone, George Kitt, and Lome received no notice of that meeting.

At this meeting of August 9, 1951, a roster of members was prepared, and a "constitution" and by-laws were adopted. Article VII of this "constitution" provides for an "executive committee," an "official board," and "trustees." As to the latter, it is provided that there shall be three trustees—the pastor, the pastor's wife, and a person appointed by the pastor from the membership to serve for one year. Kincaid appointed Mrs. Pearl Wood to be the third trustee.

In December, 1951, the deposed trustees, Stone and George Kitt, held a board of trustees meeting. They there determined to call an annual meeting of the church membership, to be held at the church at 7:45 p. m., on January 3, 1952. This was the day prescribed in the articles of incorporation for the holding of annual meetings. It had been customary to hold such meetings in the evening. Notice of this meeting was published in two consecutive issues of the Wilbur Register, a weekly newspaper. Written notice was also given.

Kincaid received written notice of the meeting, and also saw the notice in the paper. He thereupon called an annual meeting to be held at two o'clock p. m. on the same day. Notice of this meeting was announced from the pulpit. Stone, George Kitt, and interveners received no notice of the afternoon meeting and did not attend.

It was dark and snowing when the other faction reached the church door for the meeting called for 7:45 that evening. They found the church door locked. Kincaid testified that it was he who turned the key. Leaving a notice on the door as to where the meeting would be held, this group then proceeded to the law offices of Charles A. Aten, in Wilbur.

The meeting was held in the reception room of this office. About twelve persons attended this meeting, including all but one of the interveners. All who attended claimed to be members of the church. Among their number was Stone, one of the incorporators and original trustees; George Kitt, who had been elected a trustee in 1948; and Mrs. Bertha Stone, who was named in the articles of incorporation as the first secretary. Several witnesses testified that those present constituted more than a majority of the total church membership.

At this meeting, by-laws were adopted; Stone, George Kitt, and Lome were elected trustees; and a motion was passed declaring the pulpit vacant. Stone was chosen chairman of the board, and Mabel M. Kitt was elected secretary and treasurer. Under the by-laws adopted at that meeting, the two officers last named are each required to sign all

checks drawn upon church funds. The bank was given written notice to this effect on the following day. Three days later this action was begun.

A great deal of testimony was taken at the trial bearing upon the question of what persons were, and what persons were not voting members of the church corporation. Such matters as regularity of attendance, financial contributions, participation in communion services, and the taking of baptismal vows, were explored.

Appellant's first assignment of error raises the question of whether the court had jurisdiction to litigate the right to receive these church funds in an interpleader action. The argument is made that such an action is inappropriate because all parties concede that the church is the sole owner of the funds.

The applicable statute relating to interpleader is RCW 4.08.160, Rem. Rev. Stat., § 199, and reads as follows:

"Anyone having in his possession, or under his control, any property or money, or being indebted, where more than one person claims to be the owner of, entitled to, interested in, or to have a lien on such property, money, or indebtedness, or any part thereof, may commence an action in the superior court against all or any of such persons, and have their rights, claims, interests, or liens adjudged, determined, and adjusted in such action."

It is not necessary, under this statute, that the persons impleaded claim any personal ownership of or lien upon the property in question. It is sufficient if they claim to be "entitled to," or "interested in," such property. The executor or administrator of an estate can, for example, be impleaded with respect to property claimed for the estate. *First Nat. Bank v. Reynolds,* 127 Me. 340, 143 Atl. 266, 60 A. L. R. 712.

Here Kincaid, on the one hand, and Stone and Mabel M. Kitt, on the other, claimed to be the officer or officers of the church corporation in whom is vested sole authority to withdraw church funds on deposit in the bank. In our view, they therefore claim to be "entitled to" and "inter-

ested in" such funds, within the meaning of the quoted statute.

Appellant cites *Stusser v. Mutual Union Ins. Co.,* 127 Wash. 449, 221 Pac. 331, for the rule that the plaintiff in an interpleader action must have "a real doubt" as to which of certain claimants is entitled to the fund in question. The problem before the court in that case was whether an insurance company which denied all liability under a passenger bus liability insurance policy could implead several persons who were injured in an accident and who sought recovery under the policy. We held that it could not, as the company did not stand indifferent as a distinterested stakeholder. In that connection, we quoted at length from *Pope v. Missouri Pac. R. Co.,* 175 S. W. (Mo.) 955. This quotation, in addition to announcing the rule which we relied upon in *Stusser,* contains a statement (not germane to the *Stusser* decision) to the effect that the plaintiff in an interpleader action must have "reasonable cause for a real doubt" as to which of certain claimants is entitled to the fund in question.

It will thus be seen that the latter pronouncement had no bearing on the result reached in *Stusser.* That decision, therefore, may not be regarded as announcing the rule contended for. Whatever the requirement may have been at common law, or may be under the statutes of other states, our own statutes (RCW 4.08.160-180 [*cf.* Rem. Rev. Stat., §§ 199-201]) do not require an allegation or showing that the plaintiff in an interpleader action has a "real doubt" as to which of certain claimants is entitled to the property or money.

The complaint before us contains an allegation that the bank believes that Kincaid, Stone, and Mabel M. Kitt are about to commence replevin suits against the bank for possession of the funds. Referring to this allegation, appellant cites *Standard Gold Mining Co. v. Byers,* 31 Wash. 100, 71 Pac. 766, for the proposition that the title to a corporate office cannot be tried in an action of replevin. It is argued that, in view of that decision, the allegation just referred

to is without substance, and the bank had no basis for fearing that it might twice be held liable for one obligation.

■ The allegation in question is surplusage. Our statutes relating to interpleader do not require that, before an action can be maintained, plaintiff shall allege that he has been sued or suit threatened, or that he is in danger of having judgment rendered against him twice for the same property. *Daulton v. Stuart,* 30 Wash. 562, 70 Pac. 1096.

■ Appellant also contends that the bank in the instant case did not occupy a position of indifference as an impartial stakeholder. As noted above, it was held in *Stusser v. Mutual Insurance Co., supra,* that such a position and attitude on the part of the plaintiff in an interpleader action is a requirement of our statute.

Appellant bases this contention on the circumstance that, although the bank had notice of the controversy on July 5, 1951, it took no action until it filed the instant complaint on January 7, 1952, this being only a few days after Stone and others consulted the bank's attorney, Charles A. Aten.

The record does not indicate whether this consultation was with Aten as attorney for the bank, or otherwise. Aten did represent the bank in the interpleader action, but neither he nor his client took any position, favorable or unfavorable, as to any of the parties. While the evening meeting of January 3, 1952, was held in the reception room of his office, Aten did not participate in the meeting. The bank disclaimed any interest in the funds and deposited them with the clerk of the court. In our opinion, the bank assumed and maintained the position of an impartial stakeholder throughout these proceedings.

Appellant's second assignment of error presents the question of whether the trial court should have dismissed the action on the ground that the purpose of the action was to try title to corporate offices, and that this could only be done by *quo warranto* proceedings.

Appellant cites *Manlove v. Johnson,* 198 Wash. 280, 88 P. (2d) 397, and *Standard Gold Mining Co. v. Byers, supra,* on this branch of the case. In *Manlove,* it was held that the

title to *public office* can be tried 'only in *quo warranto* proceedings. In the *Standard Gold Mining Co.* case, it was held that the title to corporate office could not be tried in an action of replevin for personalty of the corporation.

The pertinent statutes (RCW 7.56.010-.020 [*cf.* Rem. Rev. Stat., §§ 1034, 1035]) read as follows:

"7.56.010 *Against Whom Information May Be Filed.* An information may be filed against any person or corporation in the following cases:

"(1) When any person shall usurp, intrude upon, or unlawfully hold or exercise any public office or franchise within the state, or any office in any corporation created by the authority of the state; . . .

"(3) When several persons claim to be entitled to the same office or franchise, one information may be filed against any or all such persons in order to try their respective rights to the office or franchise; . . ."

"7.56.020 *Who May File.* The information may be filed by the prosecuting attorney in the superior court of the proper county, upon his own relation, whenever he deems it his duty to do so, or is directed by the court or other competent authority, or by any other person on his own relation, whenever he claims an interest in the office, franchise, or corporation which is the subject of the information."

■ We think appellant's contention is without merit for two reasons: First, *quo warranto* was not a remedy available to the bank on its own relation, because it does not claim an interest in the corporate offices in question, or in the corporation. See RCW 7.56.020 above; *State ex rel. White v. Point Roberts Reef Fish Co.*, 42 Wash. 409, 85 Pac. 22. If the bank could have invoked this remedy at all, it could only have been on the relation of the prosecuting attorney, either in the exercise of his own discretion or under the compulsion of an order entered at the discretion of the court. RCW 7.56.020, *supra*; *State ex. rel. Gilbert v. Prosecuting Attorney*, 92 Wash. 484, 159 Pac. 761. Under the circumstances of this case, we do not regard this as an adequate remedy at law. We therefore conclude that the bank's resort to equity in this interpleader action was

proper. See *Columbian Cat Fanciers v. Koehne,* 96 F. (2d) 529.

■ Second, in so far as title to corporate office is concerned, *quo warranto* is not, under all circumstances, an exclusive remedy. The title to such office may, in fact, be tried in any action where necessary to the determination of other matters in controversy. The right of persons to serve as officers or trustees of a corporation has thus been litigated and determined in actions to prevent the redemption of foreclosed real estate (*Baggot v. Turner,* 21 Wash. 339, 58 Pac. 212); to enjoin a former trustee and stockholder from exercising control over the affairs of the corporation (*Oudin & Bergman Fire Clay Min. & Mfg. Co. v. Conlan,* 34 Wash. 216, 75 Pac. 798); to cancel a mortgage (*Kneeland Inv. Co. v. Berendes,* 81 Wash. 372, 142 Pac. 869; *Applequist v. Swedish Evangelical etc. Church,* 154 Wash. 351, 282 Pac. 224); and to recover property diverted by the officers (*Tefft v. Schaefer,* 148 Wash. 602, 269 Pac. 1048).

■ The third assignment of error questions the power of the court to determine the rights of Pearl Wood and Mrs. W. A. Kincaid to certain corporate offices when they were not parties to the action.

This objection was not raised by demurrer or answer. It may not be raised here for the first time. *In re Ivers' Estate,* 4 Wn. (2d) 477, 104 P. (2d) 467.

Under his fourth assignment of error, appellant challenges the trial court's ruling that all proceedings taken at the meeting of August 9, 1951, were void. This gets at the real heart of the controversy, for if the "constitution" and by-laws there adopted and the trustees there appointed were validly adopted and appointed, the meeting held by respondents on the evening of January 3, 1952, was a nullity.

The trial court's reasons for declaring void the proceedings had on August 9, 1951, are stated in finding of fact No. 7, as follows:

"Prior to August 5, 1951, the corporation and church had never adopted by-laws or a constitution. W. A. Kincaid called a meeting for August 9, 1951, and a purported constitution and by-laws were adopted by those present. At

that time R. L. Stone and George Kitt constituted a majority of the Board of Trustees. They did not participate in the calling of that meeting and had no voice in it. There is no proof that any notice of that meeting was given to the members of the corporation. There is no proof as to who were present at that meeting. All proceedings taken at that meeting are void."

It will be observed that the trial court found the meeting of August 9, 1951, to be defective in three respects: (1) The meeting was not authorized by a majority of the board of trustees; (2) it was not proved that notice of the meeting was given to the members of the corporation; and (3) it was not proved that members of the corporation attended that meeting.

We believe that each of these reasons has merit, but will here discuss only the first reason given. The articles of incorporation contain no provision relating specifically to the calling of meetings of the membership. They do provide, however, that the corporation shall be "managed" by a board of trustees. They also provide that Kincaid shall serve as president until his successor is elected and qualified.

As a general rule, the president of a corporation has no power to call a meeting of the stockholders or members, unless the by-laws or a resolution of the board of directors or trustees make it his duty to do so. *Knoll v. Levert,* 136 La. 241, 66 So. 959; *Dusenbury v. Looker,* 110 Mich. 58, 67 N. W. 986; 5 Fletcher Cyc. Corporations (Perm. ed.) 7, § 1997. While the cited cases pertain to private business corporations, we see no reason why the rule there announced is not equally applicable to religious corporations. There may be exceptional circumstances under which the president or other managing officer of a corporation may be deemed to have authority to call such a meeting. See *First African M. E. Society v. Worthy,* 232 Mass. 331, 122 N. E. 289. No such circumstances exist in this case.

Kincaid's action taken on November 30, 1950, in attempting to displace Stone and George Kitt as trustees was, of course, a nullity. No annual meeting of the membership having occurred between then and August 9, 1951,

they held over as trustees, along with Kincaid. It is not contended that either Stone or George Kitt authorized Kincaid to call the latter meeting, and the fact is that they did not even have notice of it. There were no by-laws then in effect. Kincaid therefore was without authority to call the meeting of August 9, 1951.

We accordingly conclude that the trial court did not err in holding that the proceedings of August 9, 1951, were void.

It is unnecessary to consider the fifth assignment of error, which relates to the afternoon meeting of January 3, 1952. In view of the conclusions stated with regard to the fourth and sixth assignments of error, the afternoon meeting was a nullity. It is therefore immaterial how notice of that meeting was given, or who attended, or what was done.

The sixth assignment of error questions the trial court's finding of fact to the effect that two thirds of the membership of the church corporation were present and participated in the meeting held on the evening of January 3, 1952.

In our opinion, the evidence does not clearly preponderate against this finding. But, since no quorum had been established by by-laws or otherwise, it was not necessary that it be shown that a majority or any other percentage of the total membership attended. We know that Stone, George Kitt, and Bertha Stone, who attended that meeting, were members. They were trustees or officers of the corporation, and, under the articles of incorporation, trustees and officers could be elected only from the membership.

Appellant also argues that the evening meeting of January 3, 1952, was not regularly called, because it was not announced from the pulpit.

While this was the customary way of giving notice of meetings, there is no requirement in the articles of incorporation that notice be given in this manner. Kincaid's hostility to the holding of the evening meeting made the giving of such notice impossible. Under the circumstances, the published and written notice which was given was far

more effective than announcement from the pulpit would have been. No one complained at the trial that he or she failed to receive notice of the meeting in question. This assignment of error is therefore without merit.

The seventh and ninth assignments of error raise no new question.

Appellant's eighth assignment of error raises an objection to the provision in the judgment to the effect that the trustees are entitled to the possession and control of all the property of the corporation, both real and personal.

This began as an action in interpleader involving the funds deposited with the clerk of the court. It was sought in respondents' answer and cross-complaint to include the additional issue of whether Kincaid and his family should be evicted from the church premises. It was announced in the trial court's oral opinion, however, that the only question which would be determined was who had the right to receive the deposited funds. The judgment, nevertheless, includes the provision referred to above.

■■■ Under some circumstances, the original issues of an interpleader action may be expanded to include additional matters in controversy between the parties. See *Seattle v. Turner,* 29 Wash. 515, 69 Pac. 1083; *Provident Savings & Loan Ass'n v. Booth,* 138 Neb. 424, 293 N. W. 293. Here, however, we have held that it is permissible to try title to corporate office in an action other than *quo warranto,* on the theory that it was necessary to the determination of the ownership of the funds which were held by the bank. Moreover, the evidence is inconclusive as to what persons hold actual title to the real property on which the church building is located. It is therefore uncertain whether all necessary parties are before the court. See RCW 4.08.130 [*cf.* Rem. Rev. Stat., § 196].

For these reasons, we are of the opinion that the issues of the instant case should have been limited to a determination of who is entitled to receive the deposited funds. The judgment should accordingly be modified to eliminate paragraph No. 3, relating to other church property.

Finally, appellant contends, under his tenth assignment of error, that interveners should not have been awarded a judgment against appellant for their costs.

Persons improperly intervening are not entitled to costs. *Springer v. Ayer,* 50 Wash. 642, 97 Pac. 774. So far as the record reveals, no contention was made in the trial court that it was not proper for these persons claiming membership in the church to intervene. In our opinion, they had an interest in the matter in litigation, and in the success of one of the parties, within the meaning of the statute pertaining to intervention. RCW 4.08.190 [*cf.* Rem. Rev. Stat., § 202]. Two of the interveners, George Kitt and Carl Lome, were adjudged to be trustees and, along with Stone, the third trustee, to be entitled to receive the deposited funds.

The cause is remanded with directions to modify the judgment by eliminating paragraph No. 3 thereof. In all other respects, the judgment is affirmed. The parties will bear their own costs on this appeal.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.