[No. 8415–9–III.   Division Three.   June 28, 1988.]

EAST LAKE WATER ASSOCIATION, *Respondent,* v. ALAN
ROGERS, *Appellant.*

*Richard Price,* for appellant.

*Michael Howe,* for respondent.

McINTURFF, C.J.—East Lake Water Association was
granted judgment against Mr. Rogers for interest on
assessments and attorney fees. We affirm.

East Lake is a nonprofit corporation organized to develop
and operate a domestic water delivery system for a resi-
dential tract of land near Lake Osoyoos in Okanogan

County. It was incorporated in 1973 and membership was based on ownership of a building site in the tract, plus $100 membership fee. The bylaws allow only one vote to each member. Mr. Rogers bought two tracts of land, paid $200 in membership fees and was issued two membership certificates. Mr. Rogers eventually became secretary/treasurer of East Lake.

An upgrade of the water system was required before Mr. Rogers and other landowners similarly situated could obtain the necessary permits to build on their land. The assessment at issue was to facilitate an upgrade of the water system. Mr. Rogers participated in the change in East Lake bylaws related to upgrading the system. One amendment allowed East Lake to collect interest on past due capital assessments. Mr. Rogers maintains that meetings regarding the improvements did not conform to the bylaws, therefore, he challenges the validity of the assessment. Mr. Rogers paid the capital assessment charge, but refused to pay interest or attorney fees.

The first and dispositive issue is whether East Lake levied assessments against its members according to its bylaws. Mr. Rogers asserts that where an association does not follow its bylaws as to notice or quorums for a meeting and membership approval of assessments, it is without power to collect interest and attorney fees on a delinquent assessment. Where a meeting of a nonprofit corporation is not in accordance with its bylaws, it proceedings are void. *State Bank v. Wilbur Mission Church,* 44 Wn.2d 80, 91–93, 265 P.2d 821 (1954).

Several bylaw provisions govern the validity of the assessment. Article 3 of the amended bylaws of East Lake governs the "Powers and Duties of Directors". Article 3, section A(c), states, in part: "power to assess for capital contributions is reserved to the membership by simple majority." Article 6 governs "Membership and Revenue". Article 6, section C, states in part:

Special capital assessments for the water system may be levied by a simple majority of the members, voting in

person or by proxy at a regular or special meeting of the membership. "Capital Assessment" means an assessment for improvement or expansion of the water system costing more than $500.00.

Article 4, section D, provides the secretary/treasurer shall issue notices of all directors and members meetings. Article 5, section A, requires notice of regular meetings and a signed request by three members to call a special meeting.

The trial court made several findings of fact which Mr. Rogers contends were in error.

Findings of fact 11 through 13 provide:

## XI.

The officers of the association decided to hold an election of all members of the association regarding the necessary expansion/improvements as was required by the bylaws of the corporation for capital improvements.

## XII.

Defendant Rogers participated in the election and the proposition to improve the system passed overwhelmingly with Mr. Roger's support.

## XIII.

Association members were asked to state a preference in a "Poll" as to whether the assessment would be paid in cash or on a deferred payment basis, with interest.

And, finding of fact 22 provided:

Subsequent to the aforesaid approval by the membership of the capital improvement project, a contract was let and all work was subsequently completed.

The court in conclusion of law 3 stated:

That the assessment in question in this action was appropriately made by the plaintiff association and the defendant is bound to pay the same.

We begin analysis of the validity of the assessment with recognition that a finding of fact supported by substantial evidence will not be reversed on appeal. *Group Health Coop. of Puget Sound, Inc. v. Department of Rev.,* 106 Wn.2d 391, 397, 722 P.2d 787 (1986).

A. Was the "Poll" of the membership a regular or special meeting constituting approval of the capital assessment?

On January 6, 1984, East Lake mailed to each member a form titled "Poll" and indicating its topic was "Subject: Financing the upgrading of the existing well." The form asked each member to vote on how the association should finance the upgrading—whether the member preferred to pay in cash or have the association finance the amount needed.

The "Poll" did not ask the member whether he or she approved the capital assessment. The poll indicated the approximate cost to each member would be $800, however, and that failure to respond to the poll would be counted as a "cash" vote.

We hold that since the poll did not request a vote on whether the capital assessment should be made, but only dealt with financing, there was no approval by the membership of the capital assessment.

B. Is there evidence in the form of minutes of meetings held by East Lake which constitutes a membership meeting approving the capital assessment?

East Lake argues the meetings held October 5, 1983, and November 30, 1983, constitute approval of the capital assessment per the bylaws. The minutes of the October 5, 1983, meeting indicate 15 members were present. The inadequacy of the present water system was discussed and "[a] motion was made, seconded and passed on a yes vote, unanimousely [sic], to approve the Comprehensive plan set forth by Mr. Philips." There is no indication whether this was a regular or special membership meeting, or whether there was any notice to the members of what would be discussed at this meeting.

Whether there was adequate notice of the November 30, 1983, meeting is unclear, nor is there any evidence of notice of this meeting in the previous meeting's minutes or otherwise. However, it is clear there was an attempt at this

meeting to vote on an assessment to upgrade the water system:

> A report was given of an estimate of approximately $16,025 to update our existing well with a 10,000 gallon cement holding tank and accessories.
>
> *A Motion was made and seconded to go ahead and complete said updating. This motion was passed unanimously by all members that was [sic] present.* With the present 20 (twenty) lots that make up the association, along with the 3 (three) new members that we voted to accept into our association, on August 10, and Sept. 14, 1983 would be a total of 23 (twenty three) members. This would be an approximate cost of $700.00 per lot. It was in full agreement that the 3 (three) members would pay their initial $100.00, their share of approximate $700.00 plus they would share the full cost of digging the ditch and laying the pipe, from the existing line, to the north, in the easement, then to the east, back to the resevoir [sic]. All lines to be laid in the easement.

(Italics ours.) It is not possible to tell whether a quorum was present, as the minutes only refer to a passing of the motion by the unanimous consent of all members present. At this meeting the next meeting was set for January 13, 1984. Apparently no quorum was present at the January 13 meeting.

At trial, Mr. Rogers was asked: "[A]fter those ballots . . . were submitted and were counted it was the decision of the corporation to proceed with the improvement project, isn't that correct?" Mr. Rogers answered: "Yes . . . The meeting where it was decided to go ahead I believe was the December 9th meeting which I wasn't . . . in attendance."

The reason the court denied Mr. Rogers' motion to dismiss based on failure to present evidence of assessment was that Mr. Rogers had testified there was a meeting. However, there are no minutes to prove the meeting, notice of the meeting, whether it was a membership or board of directors meeting, or whether a quorum was present. Therefore, we hold the court's conclusion that the assessment was appropriately made was erroneous.

C. Is Mr. Rogers estopped to deny the assessment because of his position on the board of East Lake, or participation in the process?

Mr. Rogers was appointed as secretary/treasurer of East Lake on October 5, 1983, and served 5 months. It was the secretary/treasurer's responsibility to give notice of membership and directors meetings and to record whether a quorum was present and voting statistics on motions. East Lake claims Mr. Rogers cannot complain that there is no evidence of notice, quorum or majority vote at the meetings since it was Mr. Rogers' failure to execute his own duties which resulted in any inadequacy in the record.

Equitable estoppel has three elements: (1) admission, statement or act inconsistent with the claim afterward asserted; (2) action by the other party on the faith of such admission, statement or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate the admission, statement or act. *McDaniels v. Carlson,* 108 Wn.2d 299, 308, 738 P.2d 254 (1987). First, although Mr. Rogers did not prepare all the meeting minutes (the November 30 minutes were taken by an acting secretary/treasurer), it was his responsibility to give notice of the meetings and prepare the minutes of the meetings. It would be incongruous to allow Mr. Rogers to claim that his own failure to adequately carry out his responsibilities is a procedural defect rendering the assessment invalid. Second, the required action by East Lake necessary to establish estoppel was that it proceeded with the upgrade of the water system, encouraged by the results of the financing poll, in which Mr. Rogers participated. Third, Mr. Rogers' failure to carry out his duties as secretary/treasurer led to the injury of the corporation—any errors of omission in giving notice of meetings or recording the minutes resulted in this challenge to the assessment procedure.

We hold Mr. Rogers, by his actions or inactions, is estopped to challenge the validity of the assessments.

■ The second issue is whether Mr. Rogers may assert the defense of usury. Issues not raised at trial are not preserved for appeal; the reason for this rule is to allow the trial court to correct any error thereby avoiding unnecessary appeals and retrials. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). Mr. Rogers' counsel, in closing, remarked: "The issues of usury and such I don't think are even at play at this point. Defendants rested, we didn't put that on as an affirmative defense." The theory of usury, having not been raised at trial as conceded by Mr. Rogers' counsel, was not preserved for appeal.

The third issue is whether limiting Mr. Rogers to one vote resulted in an unequal allocation of burden upon members of the association such that it was unconstitutional. Under East Lake's bylaws, article 5, section G, Mr. Rogers was entitled to only one vote as a member of East Lake. This was despite the fact that he owned two lots and assessments were made on a per lot basis. Mr. Rogers had paid a separate membership fee for each lot and had been issued two membership certificates. Mr. Rogers claims a 1–person, 1–vote rule is unconstitutional in this instance because assessments are made on a per lot basis, not a per vote basis. Therefore, he claims, any assessments based on a membership voting scheme that was unconstitutional would be void.

First, East Lake contends the analysis in *Foster v. Sunnyside Vly. Irrig. Dist.*, 102 Wn.2d 395, 403, 687 P.2d 841 (1984) and federal cases is inapplicable to its voting scheme because East Lake is a private nonprofit corporation, not a unit of local government like that in *Foster*. Mr. Rogers argues there was state action in East Lake participation in the capital improvement project, seeking of federal funding, and operation of a quasi municipality by operating a public domestic water delivery system.

Existence of "state action" for constitutional purposes depends on whether there is a sufficiently close nexus between the State and the challenged action of a regulated

entity so the action of the latter may be fairly treated as that of the State itself. *In re Colyer,* 99 Wn.2d 114, 121, 660 P.2d 738 (1983). Irrigation districts are municipal corporations, created by the Legislature for a public purpose, despite the fact they perform no government functions. *Haberman v. WPPSS,* 109 Wn.2d 107, 170, 744 P.2d 1032, 750 P.2d 254 (1987). The term municipal corporation, used in its broadest sense, includes quasi–municipal corporations such as an irrigation district. *Roza Irrig. Dist. v. State,* 80 Wn.2d 633, 640, 497 P.2d 166 (1972).

State action was present in the federal cases cited by Mr. Rogers. *Ball v. James,* 451 U.S. 355, 357, 68 L. Ed. 2d 150, 101 S. Ct. 1811 (1981); *Salyer Land Co. v. Tulare Lk. Basin Water Storage Dist.,* 410 U.S. 719, 35 L. Ed. 2d 659, 93 S. Ct. 1224 (1973). Although East Lake is not an irrigation district or other local government unit formed under statute, it is similar to the water delivery districts in *Ball* and *Salyer* because its sole purpose is to provide water to the landowners in the district. Although it is not certain whether the acts of East Lake constitute state action necessary for constitutional analysis, we will assume state action for the purposes of the following analysis.

Second, East Lake argues RCW 24.06.110 allows shareholder's rights to vote to be determined by the articles of incorporation. RCW 24.06.110 permits such voting rights to be limited, enlarged, or denied to the extent specified in the articles of incorporation. Unless the articles specify a different voting scheme, each member shall be limited to one vote on each matter. Under East Lake's bylaws each member is entitled to one vote only. This is consistent with the 1–person, 1–vote rule of RCW 24.06.110.

■ However, the right to vote is fundamental under both the United States and Washington Constitutions. *Foster,* at 404. Unlike the United States Constitution, the Washington Constitution specifically confers upon its citizens the right to "free and equal" elections. Const. art. 1, § 19; *Foster,* at 404. The Washington Constitution provides a

greater safeguard of this right than the United States Constitution. *Foster,* at 404.

The strict 1–person, 1–vote rule of *Reynolds v. Sims,* 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362, *reh'g denied,* 379 U.S. 870 (1964) has not always been followed by the United States Supreme Court where the election of representatives in special purpose municipal districts is concerned. *Ball,* 451 U.S. at 370; *Salyer,* 410 U.S. at 730; *Foster,* at 408. In view of the supremacy clause, U.S. Const. art. 6, a state must satisfy the Supreme Court's test for departure from the strict rule of *Reynolds v. Sims, supra. Foster,* at 408. *Ball,* 451 U.S. at 370–71 and *Salyer,* 410 U.S. at 728–29, set out a test to determine when a special purpose municipal district is exempt from the strict scrutiny to which regulation of voting rights is normally subjected. *Foster,* at 408. If a district's authority is limited to facilitating a nongovernmental purpose, the test is only whether the voting scheme is reasonable. *Foster,* at 409.

Statutes and voting schemes giving greater influence in water district elections to voters most affected by the district's operations have been upheld. See *Salyer* and *Ball. Foster,* at 411, stated a departure from the 1–person, 1–vote rule was consistent with Const. art. 1, § 19, because such a voting scheme was based on the allocation of burden upon residents in the district—those receiving more of a burden are entitled to a greater say in the district's operation. However, in *Foster* the scheme was still deficient because some landowners subject to assessments received no vote despite the fact they were directly and significantly affected by the district's operation.

In *Foster* the statute based voting rights on land ownership, but no person was allowed more than two votes regardless of the amount of land owned. However, even assuming a departure from the 1–person, 1–vote rule could be justified, there is no authority that such a departure would require that each member receive a vote for each lot owned. *Foster* did not address whether limiting a person to

two votes was an unreasonable scheme but merely held that depriving landowners of any voice was unconstitutional.

We hold that although a departure from 1–person, 1–vote could perhaps be justified, no authority was cited or found which is persuasive that such a departure is constitutionally mandated.

The judgment of the Superior Court is affirmed—the assessments against Mr. Rogers' property are valid. East Lake is entitled to reasonable attorney fees of $3,000 on appeal.

GREEN and THOMPSON, JJ., concur.