No. 99-472

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 248N

BIG SKY OWNERS ASSOCIATION, INC.,

a Montana non-profit corporation,

Plaintiff and Respondent,

v.

DOUGLAS ADELMANN, GIL BRANDT,

C. J. HANAN, BARBARA S. HANAN,

HAROLD P. MEABON, GREGORY T.

O'CONNOR, JEAN R. O'CONNOR,

CATHY REICHSTETTER, JAMES L.

VAN DEN BIESEN, and MARILYN J.

VAN DEN BIESEN,

Defendants and Appellants.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Roger N. Flair, Bozeman, Montana

For Respondent:

J. Robert Planalp, Landoe, Brown, Planalp, Braaksma & Reida, Bozeman, Montana

Submitted on Briefs: December 2, 1999
Decided: September 14, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. The decision shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of non-citable cases issued by this Court.

¶2 Douglas Adelmann and nine other members (hereinafter Appellant Members) of the Big Sky Owners Association (hereinafter BSOA), appeal from a Declaratory Judgment issued by the Eighteenth Judicial District Court, Gallatin County, in favor of BSOA.

¶3 We affirm.

¶4 Appellant Members set forth the following three issues for our review:

1. Did the District Court err when it declared that BSOA's February 1, 1994 election was valid, although evidence demonstrated that the election propositions did not receive the requisite number of votes?

2. Did the District Court err when it declared that BSOA's September 4, 1993 and February 1, 1994 elections were valid, although evidence showed that the elections violated Montana statutes governing nonprofit corporations, as well as BSOA's

articles of incorporation and bylaws?

3. Did the District Court err when it declared that BSOA's September 4, 1993 and February 1, 1994 elections were valid, although evidence showed that BSOA modified and tampered with members' ballots after the ballots were cast?

## Factual and Procedural Background

¶5 At stake in this matter is whether a non-profit corporation's membership elections violated Montana law as well as its own governing bylaws and articles of incorporation.

¶6 The Respondent is Big Sky Owners Association, Inc., a non-profit owners association corporation. Its purpose is to manage, operate and maintain the summer and winter resort area known as "Big Sky, Montana," located in Gallatin and Madison counties. Appellants are members of BSOA. The dispute between BSOA and the Appellant Members arose as a result of an election held in September of 1993, and a subsequent re-vote by mail conducted in early 1994.

¶7 Under BSOA's articles of incorporation, members are entitled to vote if they are "owners in fee of real property or commercial lessees" in the described geographical area under the corporation's management. A member is given one vote for each "membership share," for each condominium unit, lot, or tract of land owned or commercially leased in the described area of Big Sky, Montana. Thus, one individual member could conceivably cast numerous votes pursuant to his or her shares of property, which the record indicates occurred.

¶8 Following the election, the Appellant Members issued a letter of protest to all BSOA members. BSOA initiated this declaratory judgment action in October of 1994 to have both elections declared valid.

¶9 Appellants, in turn, challenged BSOA's proposed declarations, suggesting that the results of the elections were tainted by various violations of state law governing non-profit corporations as well as violations of BSOA's bylaws and articles of incorporation. Specifically, the Appellants challenged the election of directors in September of 1993, the voter approval of a new post office construction proposal, and the voter approval of a proposition to include certain properties within BSOA's jurisdictional area. By way of counterclaim, the Appellants sought to have the election declared invalid and enjoin

BSOA from taking any action in reliance upon the invalid results.

¶10 The matter was tried on June 3, 1996. The Appellant Members rested after BSOA presented its case, and therefore did not call any of their own witnesses. The District Court issued a 32-page Findings of Fact and Conclusions of Law on February 23, 1999. The court included a two-page memorandum, adding that because it found no bad faith or intention to defraud or harm, "the court found in favor of the plaintiff [BSOA]." Nevertheless, the court admonished BSOA, stating that it should "clean up the way it conducts its elections." The court then stated that the Appellant Members did not approach this dispute "with clean hands," and described the method by which they attempted to "sabotage the election."

¶11 The District Court found, on the whole, that BSOA's methods for determining which members were entitled to vote, and how many votes were accorded to members, were less than proficient. Further, the method for casting votes in person at the association's annual meeting as well as by mail in February of 1994 was utterly complex and led to much confusion. These factors were further compounded by the fact that a majority of BSOA members reside outside of Montana or the Big Sky area, creating what the court characterized as "obvious logistical problems in achieving the required level of voter participation." The court found that "BSOA attempted to keep its list of properties and owners up to date, but there were errors and omissions." Although fraught with such problems, the court nevertheless determined and declared that BSOA did not act unlawfully.

¶12 The court stated that:

> Though defendants have cried foul, there is no evidence of any manipulation of the election process for individual gain or profit or otherwise. There is no evidence the corporation, through its agents or employees, adopted or enforced any procedure or policy in bad faith.

¶13 Appellant Members appealed the judgment of the District Court.

## Standard of Review

¶14 We review a District Court's findings and conclusions from a non-jury declaratory judgment action the same as any non-jury trial. Thus, we review the findings to determine

whether they are clearly erroneous, and the conclusions to determine whether those conclusions are correct. *See*, *e.g.*, *Kelly v. Burlington Northern R.R. Co.* (1996), 279 Mont. 238, 242, 927 P.2d 4, 6; *Reichle v. Anderson* (1997), 284 Mont. 384, 387-88, 943 P.2d 1324, 1326 (citations omitted).

## Discussion

¶15 Appellant Members argue that the elections in question were not valid pursuant to BSOA's articles of incorporation and bylaws as well as governing state law, and therefore the results of the election cannot be upheld pursuant to BSOA's declaratory judgment action. We disagree.

¶16 Although Appellant Members' brief is long on allegations couched as statements of fact, it is remarkably short on legal analysis and citation to authority. The three-page argument portion of Appellant's brief (no reply brief was filed) does not specifically address each issue raised. *See* Rule 23(a)(4), M.R.App.P. Accordingly, neither shall this Court.

¶17 The main thrust of Appellant Members' legal argument relies on this Court's decision in *Two Crow Ranch, Inc.* (1972), 159 Mont. 16, 494 P.2d 915, and a decision from the Washington state court of appeals, *East Lake Water Ass'n v. Rogers* (Wash.Ct.App. 1988), 761 P.2d 627. In *Two Crow Ranch*, we stated that it is well established precedent that "the bylaws of a corporation, together with the articles of incorporation, the statute under which it was incorporated, and the member's application, constitute a contract between the member and the corporation." *Two Crow*, 149 Mont. at 23, 494 P.2d at 919 (stating that member of grazing district must operate its livestock in accordance with the bylaws of the grazing district). The Washington court ruled in *East Lake Water*, that "[w]here a meeting of a nonprofit corporation is not in accordance with its bylaws, its proceedings are void." *East Lake Water*, 761 P.2d at 628-29 (concluding that where there was no evidence that a vote on capital assessment was actually conducted, as prescribed by corporate bylaws, there was no valid approval by the membership of the capital assessment).

¶18 Based on the foregoing general principles, Appellant Members contend that "[n]otwithstanding the clear mandate of Montana's law and the express requirements of its Bylaws, Respondent Corporation [BSOA] conducted its elections in willful violation thereof." Our examination of the record leads us to conclude that the elections in question did not involve any "willful" contravention of state law or BSOA's articles of

incorporation or bylaws.

¶19 Specifically, Appellant Members argue that BSOA members actually rejected several election propositions that the District Court ultimately declared were approved. The two ballot propositions at issue are the approval for appropriating funds through membership assessment for a new post office, which required a 51 percent approval, and the decision to expand the properties governed by BSOA, which required a 66 percent approval.

¶20 Membership approval of these propositions was overwhelming. The undisputed evidence--including independent review of the election by an accounting firm--shows that 1067 votes were cast for the post office proposition and 1096, 1080 and 1088 votes were cast for each of the proposed property additions in the February 1, 1994 election. Votes in opposition to the foregoing numbered a mere 81, 59, 76, and 66, respectively.

¶21 The District Court determined that these numbers represented a portion of the 1,568 possible membership votes at the time. Appellant Members contend that the total number of potential votes against which the foregoing should be measured was actually 1,862 votes. The trial testimony--elicited during cross examination of one of BSOA's key witnesses--indicates that although the membership interests "of record" could have been calculated at 1,862 at the time of the elections, the difference resulted from BSOA's failure to account for one particular subdivision's unimproved lots. Apparently, the additional lots had never been billed, or assessed because BSOA did not know that they existed. Thus, the District Court concluded that "any errors committed in good faith would not render elections invalid." We agree with the District Court that the difference resulted simply from poor record management on the part of BSOA, and, contrary to Appellant Member's argument, no willful conduct was involved.

¶22 Thus, the substantial evidence shows that the known membership interests, which received notice of the election and which could have potentially cast votes, numbered 1,568. This factual scenario provides a stark contrast to the *East Lake Water* decision cited by Appellants, where there was no evidence that a meeting was ever held, and that the assessment in question was never put to a vote. *See East Lake Water*, 761 P.2d at 629-30. We therefore conclude that the District Court did not error in declaring that the BSOA's February 1, 1994 election results, pertaining to the addition of properties to Big Sky, and the proposed post office, were valid.

¶23 The next specific allegation addressed by Appellant Members' argument is that

according to the court's findings, BSOA "altered 169 ballots representing 478 votes." Apparently, this allegation of "ballot tampering" alludes to the practice of BSOA to enter the number of membership shares after the ballot was cast--meaning an individual would place one vote, which then would be multiplied by the number of membership interests attributed to that individual. The District Court observed that one ballot entered into evidence actually represented 195 membership interests, meaning the one vote cast actually represented 195 votes.

¶24 The court concluded that this practice "was not a violation of law or corporate procedure." The court further concluded that "each member was informed of this practice on the face of the proxy." Our review of the record leads to the same conclusion. The substantial evidence detailed in the court's findings clearly shows that this practice was conducted in a straightforward manner. We further observe that Appellant Members offered no evidence at trial, or authority here, that could possibly persuade a court to conclude that this practice involved any willful violation of any governing statutes, or BSOA bylaws or articles of incorporation.

¶25 Finally, far less specific is the broad allegation that BSOA violated its bylaws and articles of incorporation, as well as state statutes governing nonprofit corporations, which should render the elections void as a matter of law. This argument points to the District Court's findings which indicate that BSOA did in fact commit technical mistakes that do not square with such bylaws, articles of incorporation, and state law. For example, the court indicates that the February 1, 1994 election ballot "did not technically comply with section 35-2-533(4) because it did not indicate the number of responses needed to meet quorum requirements (25% of total outstanding membership interests)." The court concluded that "it is difficult to see how the defendants were prejudiced by this omission because more than 25% of the membership interests cast ballots in the February election," and therefore the "February 1994 mail election is valid and the results of the election should be upheld pursuant to the Bylaws of the Association."

¶26 Appellant Members do not provide any authority that such technical violations should lead to the remedy they seek--the voiding of the election results. A party's arguments must be supported with citation to legal authority and, where no authority is cited, we ordinarily will not address the arguments. *State v. Sol* (1997), 282 Mont. 69, 76, 936 P.2d 307, 311; Rule 23(a)(4), M.R.App.P. Further, our review of authority cited by BSOA leads to the conclusion that absent sufficient evidence of willful conduct and actual injury, such technical violations are insufficient to invalidate an otherwise valid election. See, *e.g.*,

*Scheire v. International Show Car Ass'n* (9th Cir. 1983), 717 F.2d 464, 465-66 (requiring that appellant show that association plainly contravened its bylaws in arbitrary or unreasonable manner, and, if so, that such contravention outweighed actual injury by aggrieved member); *In re Osteopathic Hosp. Ass'n* (Del.Ch. 1963), 191 A.2d 333, 336 (stating that a nonprofit corporation's amended bylaw, which is unreasonable, unlawful, or contrary to public policy, may be declared void although adopted by legitimate procedures).

¶27 We conclude, therefore, that based on our review of the record the District Court did not err in its determination that although slight, technical violations of bylaws, articles of incorporation, and statutes may have occurred during the course of BSOA's elections, the elections themselves were valid--in that the results were a product of the required majority approval by BSOA's membership and Appellant Members offered no evidence that they were prejudiced by these results.

¶28 Accordingly, the judgment of the District Court is affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER