# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, )<br><br>Interpleader Plaintiff, )<br><br>v. )<br><br>BELLEVUE PARK HOMEOWNERS ASSOCIATION, )<br><br>Respondent, )<br><br>ABOLFAZL HOSSEINZADEH, in both his individual capacity and alleged representative capacity as director of Bellevue Park Homeowners Association, )<br><br>Appellant, )<br><br>and ADRIAN TEAGUE, in both his individual capacity and alleged representative capacity as director of Bellevue Park Homeowners Association, )<br><br>Interpleader Defendant. )<br><br>_____ )<br><br>BELLEVUE PARK HOMEOWNERS ASSOCIATION )<br><br>Third Party Plaintiff, )<br><br>v. )<br> ) | No. 77368-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br><br>FILED: July 1, 2019 |

WELLS FARGO, N.A.,                          )
                                             )
          Third Party Defendant.    )
_____ )

LEACH, J. — Abolfazl Hosseinzadeh appeals the superior court's summary judgment decision in favor of the Bellevue Park Homeowners Association (HOA). Hosseinzadeh challenges actions by the HOA members that vacated the board of directors and elected a new board. Because the members had authority to call a special meeting, attendees waived notice, more than a quorum attended, and Hosseinzadeh did not provide any evidence that participants failed to follow proper procedures, we affirm.

## FACTS

Bellevue Park Condominium is a two-story 79-unit condominium in Bellevue, Washington. The HOA, made up of unit owners, governs its affairs. The association started on March 22, 1979, as an unincorporated association. It incorporated in 1994 under the Nonprofit Corporation Act (Nonprofit Act)[1] and the Horizontal Property Regimes Act.[2] The HOA is governed by Washington state law, restrictive covenants (declaration), articles of incorporation, and bylaws.[3] The articles provide for the election of a five-person board of directors by the HOA members. The board elects the HOA officers.

_____

[1] Ch. 24.03 RCW.
[2] Ch. 64.32 RCW.
[3] The HOA adopted its original bylaws in 1984 and declaration in 1979.

By December 2016, the HOA had serious organizational problems. It had no president or vice-president. It had four board directors, Abolfazl Hosseinzadeh, Xiao Cai, Martin Yamamoto, and Adrian Teague, with Yamamoto, the treasurer, scheduled to leave the board in January. Its property management firm had tendered its resignation, effective January 7, 2017. The condominium buildings had suffered storm damage during a roofing repair, causing the HOA to start a lawsuit against its contractor. And one of the remaining board members, Hosseinzadeh, was involved in pending litigation with the HOA.

In December 2016, the HOA secretary, Teague, sent a letter to the members asking them to sign a request for a special meeting "per Article 2 Section 3 of the Bylaws." Teague included a form that stated the purpose of the meeting was "to remove Xion [Cai] and Ab [Hosseinzadeh] from the board and appoint new board members." He later sent out an amended form that said the purpose of the meeting was "to replace the board of directors with new board members." According to Teague, 63.5 percent of the unit owners, representing more than the required 51 votes, responded and requested a special meeting.

Yamamoto, as planned, resigned on January 3, 2017. On January 13, 2017, in response to the requests for a special meeting, Teague and other HOA members sent the membership a notice of a special meeting to take place on

January 31, 2017.[4] The described agenda included "removal of all current board members . . . nominat[ion of] new board members . . . election of new board members."

Hosseinzadeh and Cai called a board meeting for January 7, 2017. On January 7, 2017, Hosseinzadeh and Cai attended the meeting in person. Zheng Tang attended by phone and waived notice. Hosseinzadeh and Cai "appointed [Tang] to the board." Hosseinzadeh, Cai, and Tang appointed Cai as secretary, Hosseinzadeh as president, and Tang as treasurer.[5] They then made several decisions, including hiring a new certified public accountant and appointing Cai as a point of contact for the law firm they intended to use in litigation.

On January 31, 2017, 78.84 percent of the members appeared in person or by proxy at the member meeting, 69.09 percent of members voted to remove the current board directors, and 67.95 percent elected Adrian Teague, Marlene Newman, Mark Middlesworth, Jeni Gonzalez, and Dave Jensen to the board. The following day, the board elected Teague as president, Middlesworth as vice-president, Newman as treasurer, Jensen as secretary, and Gonzalez as member at large.

---

[4] The notice included an agenda and a proxy for members unable to attend the meeting.

[5] "All board members appointed Xiao as sectary [sic] of the board. . . . All board members appointed Ab as president of the board. . . . All board members appointed Zheng as treasury [sic] of board."

In January 2017, U.S. Bank National Association received conflicting instructions for release of funds in the HOA accounts. As a result, it placed a hold on those funds. On February 1, 2017, Hosseinzadeh sent U.S. Bank an e-mail with a copy of the HOA's online registration with the Washington secretary of state attached. That form identified the HOA board as Hosseinzadeh, Cai, and Tang.[6] On February 2, 2017, Gonzales, acting as a member of the newly elected board, contacted U.S. Bank to gain access to the HOA accounts and to deny Hosseinzadeh access.

In March 2017, U.S. Bank filed an interpleader lawsuit asking the court to determine the respective rights of Hosseinzadeh, Teague, and the HOA to funds in the HOA's accounts held by U.S. Bank and to discharge it from all liability in connection with those funds. In April 2017, the HOA and Teague, in his representative capacity, answered the interpleader complaint and cross claimed against Hosseinzadeh for declaratory and injunctive relief. The HOA also joined Wells Fargo N.A. as a third-party defendant and asked the court to enjoin the Hosseinzadeh board from accessing the HOA's Wells Fargo accounts. In May 2017, Hosseinzadeh answered the HOA's cross claim. He also asked for declaratory relief and asserted a libel claim against Teague in his representative and personal capacity.

---

[6] It did not include Adrian Teague's name.

The HOA filed a summary judgment motion asking the court determine the proper membership of the board of directors and the validity of various board and membership actions. Teague filed a summary judgment motion asking the court to dismiss the claims against him. On August 15, 2017, the superior court granted summary judgment to the HOA and denied Teague's request. It held,

> [The] homeowners of the [HOA] properly called the January 31, 2017 special homeowners meeting to remove and replace all existing members of the Board of Directors;
>
> . . . [T]he [HOA's] January 31, 2017 special homeowners meeting was effective to remove existing Board directors and replace them with new Directors to create the current Board of Directors comprised of Adrian Teague, Mark Middlesworth, Marlene Newman, Dave Jensen, and Jeni Gonzalez;
>
> . . . [T]he current Board of Directors comprised of Adrian Teague, Mark Middlesworth, Marlene Newman, Dave Jensen, and Jeni Gonzalez has been the only Board with authority to act on the [HOA]'s behalf since January 31, 2017;
>
> . . . [T]he actions of those acting without authority from the current Board of Directors comprised of Adrian Teague, Mark Middlesworth, Marlene Newman, Dave Jensen, and Jeni Gonzalez after January 31, 2017 are invalid;
>
> . . . [T]he special meeting of the Board of Directors on January 7, 2017 was invalid and failed to elect Zheng Tang as a director; and
>
> . . . [T]he actions taken by the Board of Directors purportedly consisting of Zhen Tang on and after January 7, 2017 are invalid;
>
> . . . [T]he [HOA] comprised of current directors Adrian Teague, Mark Middlesworth, Marlene Newman, Dave Jensen, and Jeni Gonzalez is the only valid and duly authorized Board of Directors of the [HOA]. . . .

It later awarded attorney fees and costs to the HOA.[7]

Hosseinzadeh filed a notice of appeal. Since the summary judgment did not dispose of his claims against Teague and make the necessary findings under CR 54(b), it was not appealable as of right. Hosseinzadeh did not file a motion for discretionary review. On November 8, 2017, the superior court entered final orders disposing of the HOA's involvement in the suit and found no just reason for delay under CR 54(b). Hosseinzadeh then filed an amended notice of appeal, and this court allowed his appeal to proceed.

## STANDARD OF REVIEW

This court reviews an order on summary judgment de novo.[8] We consider all facts and reasonable inferences in the light most favorable to the nonmoving party.[9] Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[10]

---

[7] On September 19, 2017, the court issued its findings, conclusions, and order on the HOA's motion for fees and costs. On September 28, 2017, it granted in part the HOA's supplemental motion for fees and costs. On November 8, 2017, the court entered final judgment and final supplemental judgment against Hosseinzadeh.

[8] CR 56(c); Sabey v. Howard Johnson & Co., 101 Wn. App. 575, 581-82, 5 P.3d 730 (2000).

[9] CR 56(c); Sabey, 101 Wn. App. at 581-82.

[10] CR 56(c); Sabey, 101 Wn. App. at 581-82.

This court reviews a lower court's application of a statute de novo since it is a question of law.[11] Because a condominium declaration is like a deed, our review presents both questions of fact and law.[12] And the contract rules of interpretation apply to a deed.[13] We review the declarant's intent as a question of fact.[14] We review the declaration's legal consequences de novo because they are questions of law.[15]

## ANALYSIS

The HOA asks us to dismiss this appeal because Hosseinzadeh did not assign error to the superior court final judgments that were appealable as a matter of right. But Hosseinzadeh included the appealable order with his amended notice of appeal. And he assigned error to the superior court's conclusions of law on summary judgment.[16] This court reviews summary judgment orders de novo and reviews conclusions of law that are assigned error "or clearly disclosed in the associated issue pertaining thereto."[17] We decline to dismiss this appeal.

---

[11] Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 525-26, 243 P.3d 1283 (2010).

[12] Lake, 169 Wn.2d at 526.

[13] Pelly v. Panasyuk, 2 Wn. App. 2d 848, 864, 413 P.3d 619 (2018).

[14] Lake, 169 Wn.2d at 526.

[15] Lake, 169 Wn.2d at 526.

[16] The "uncontested findings" that the HOA contends are verities on appeal are not findings of fact. They are instead reiteration of the superior court's conclusions of law.

[17] RAP 10.3(g).

The HOA Properly Elected the Board on January 31, 2017

Hosseinzadeh challenges the validity of the actions taken by the members at the January 31, 2017, special meeting. He claims that the members did not have authority to call the special meeting, that the meeting was improperly noticed, and that it was not conducted with proper procedure.

Our goal when we interpret a condominium declaration is to identify and give effect to its intent.[18] If the declaration language is ambiguous, we look to evidence of the surrounding circumstances to identify its purpose.[19] In construing an ambiguous provision, we seek to realize the collective interest of the property owners.[20] And we "afford great deference to an organization's interpretation of its Bylaws and will invalidate an interpretation only if it is arbitrary and unreasonable."[21]

Consistent with this approach, the HOA's bylaws direct that they should be liberally construed "to effectuate the purpose of creating a uniform plan for the [condominium's] development and operation." They also direct that "the current

---

[18] Riss v. Angel, 131 Wn.2d 612, 623, 934 P.2d 669 (1997). This case concerns restrictive covenants governing a residential subdivision rather than a condominium declaration. However, contract rules of construction and interpretation apply equally to both types of instruments.
[19] Riss, 131 Wn.2d at 623.
[20] Riss, 131 Wn.2d at 623-24. (quoting Lakes at Mercer Island Homeowners Ass'n v. Witrak, 61 Wn. App. 177, 181, 810 P.2d 27 (1991)).
[21] Parker Estates Homeowners Ass'n v. Pattison, 198 Wn. App. 16, 28, 391 P.3d 481 (2016).

available edition of Roberts Rules of Order, Revised," be used to resolve disputes about parliamentary procedures.

i. Authority

Hosseinzadeh asserts that the bylaws and declaration allow only the president to call a special meeting, who may call the meeting only at the request of a board majority or the written request of a majority of homeowners.

The declaration states that a "special meeting of the [HOA] may be called by the President on the vote of a majority of the Board of Directors or at the written request of the owners having fifty-one (51.0) or more votes." The bylaws state, "It shall be the duty of the President to call a special meeting of the [HOA] when so directed by resolution of a majority of the Board . . . , or upon the written request of owners or their designated representatives having fifty-one (51.0) or more votes." So both governing documents impose an affirmative duty on the president to call a special meeting when so directed by the board or owners. But neither document states that these are the exclusive ways to call a special meeting. And they do not prohibit the members from calling a special meeting.

The declaration provision discussing removal of a director states, "Any director may be removed and a successor elected for the unexpired portion of his term by a majority of the owners present at a special meeting called for such purpose." This provision should be read in the context of and consistent with the

governing statutory provisions in the Nonprofit Act. The Nonprofit Act states, in relevant part,

> Special meetings of the members may also be called by other officers or persons or number or proportion of members as provided in the articles of incorporation or the bylaws. In the absence of a provision fixing the number or proportion of members entitled to call a meeting, a special meeting of members may be called by members having one-twentieth of the votes entitled to be cast at the meeting.[22]

Hosseinzadeh claims that this section provides for the members to call a meeting only when the bylaws confer that right. He contends that this section's language, when read in the context of the two proceeding paragraphs, requires his interpretation. But neither of the two preceding paragraphs identify who has authority to call the meeting.[23] And no provision in the articles, the bylaws, or the declaration fixes "the number or proportion of members entitled to call a meeting." So the Nonprofit Act provides that "a special meeting of members may be called by members having one-twentieth of the votes entitled to be cast at the meeting."[24] Hosseinzadeh has not cited any Washington law that precludes the majority of members from calling a meeting.[25]

---

[22] RCW 24.03.075.

[23] They instead identify permissible location and timing of meetings. RCW 24.03.075.

[24] RCW 24.03.075.

[25] He cites to an unreported case in Delaware and to an Arkansas decision to support his claim. The Washington cases he includes provide that a nonprofit corporation's meetings must comply with its bylaws or the proceedings are void. But they do not shed light on whether or not the president had to call

In response to Teague's December 2016 letter, more than half of the unit owners replied in writing requesting a special homeowners meeting.[26]   This comfortably exceeds the one-twentieth of votes needed to call a special meeting under the Nonprofit Act.

ii.   Notice

Hosseinzadeh contends that genuine issues of material fact exist about service of the notice of the special homeowners.  But he, Cai, and more than 51 percent of the other members of the HOA attended the meeting and effectively waived notice.

The bylaws state that notice of any HOA meeting "may be waived in writing at any time and is waived by actual attendance at such meeting, unless such appearance be limited expressly to object to the legality of the meeting."

Hosseinzadeh does not dispute that 78.84 percent of the members, including him, appeared in person or by proxy at the January 31, 2017, meeting. He does not contend he or any other member expressly objected to the legality of the meeting.  The minutes of the meeting do not include a record of anyone

---

the meeting.  E. Lake Water Ass'n v. Rogers, 52 Wn. App. 425, 426, 761 P.2d 627 (1988) (citing State Bank v. Wilbur Mission Church, 44 Wn.2d 80, 91-93, 265 P.2d 821 (1954)).

[26] While the actual percentage supporting a special meeting differs, Hosseinzadeh does not suggest it was less than a majority.

objecting to the legality of the meeting, so the attendees waived notice of attendance. We need not address the propriety of notice further.

iii. Parliamentary Procedure

Hosseinzadeh asserts that the special homeowners meeting did not effectively remove and replace the board because it did not follow the applicable procedural rules and was fundamentally unfair. He claims that the president had to preside over the meeting.

The governing documents allow for action at a members meeting if there is a quorum, "the presence, in person or by proxy, of owners having fifty-one (51.0) or more votes." The bylaws also state, in the section identifying the duties of officers, that the president "shall preside at all meetings of the [HOA]." The bylaws and declaration only require that a quorum be present for the action at a meeting by majority to be valid. While the president has the duty to preside at a meeting, no provision in the bylaws or declaration makes a meeting or action taken at it invalid if a president does not preside. Hosseinzadeh has not cited any persuasive authority to support his position. We decline his invitation to void the democratic action by a super majority of the HOA members for this reason under the circumstances of this case.

Hosseinzadeh also claims that the members did not follow proper parliamentary procedure at the special meeting. Specifically, he asserts that the

-13-

record includes no evidence of a second for the motion to terminate all appointed board members and that no discussion of the motion occurred.

But Hosseinzadeh does not support his assertion with evidence. Instead, he cites to the absence in the minutes of the meeting of any record of a motion second. He also points to the statement by Cai in her declaration that "[n]o discussion was allowed." But a failure to record a motion second in the minutes does not prove no second was made. And Cai's statement is conclusory. A conclusory statement of fact is insufficient to defeat a summary judgment motion.[27] Without contrary evidence, Hosseinzadeh's argument that the meeting violated the rules of order fails.

We conclude that the superior court did not err in deciding that the January 31, 2017, meeting was effective to remove the existing board directors. The superior court did not err in deciding that the board elected on that date is the only board with authority to act on behalf of the HOA since the January 31, 2017, meeting. Finally, it did not err in concluding that actions by others acting without authority from this board after January 31, 2017, are invalid.

Hosseinzadeh also challenges the court's conclusion that the January 7, 2017, special board meeting failed to elect Tang as a director and that the Hosseinzadeh board did not have authority after that meeting. Because we

---

[27] CR 56(e); Overton v. Consol. Ins. Co., 145 Wn.2d 417, 430-31, 38 P.3d 322 (2002).

affirm the trial court's decision that the board was removed and replaced on January 31, 2017, we need not reach this issue.

### Attorney Fees

The HOA requests attorney fees and costs as authorized by RAP 18.1 and the declaration. The declaration requires each owner to "comply strictly with the provisions of th[e] Declaration, the Bylaws, and [applicable] rules and regulations." If an owner fails to comply, it

> entitle[s] the Board of Directors to collect all attorneys' fees incurred by it by reason of such failure, irrespective of whether any suit or other judicial proceeding is commenced; and if suit is brought because of such failures all costs of suit may be recovered in addition to attorneys' fees.

On February 1, 2017, Hosseinzadeh represented to U.S. Bank that he, Cai, and Tang made up the board and had authority to act on the HOA's behalf. Because Hosseinzadeh violated the declaration and the bylaws by holding himself out as a person to act with authority after the HOA elected a new board on January 31, 2017, we award HOA attorney fees on appeal, subject to its compliance with RAP 18.1(d).

### CONCLUSION

We affirm. The superior court did not err in concluding that the January 31, 2017, meeting was proper and that members at that meeting removed the existing board and elected a new board comprised of Adrian Teague, Mark

Middlesworth, Marlene Newman, Dave Jensen, and Jeni Gonzalez. Also, the superior court did not err in concluding that only this board had authority to act on behalf of the HOA after its election on January 31, 2017, and that actions by others acting without authority conferred by this board are invalid.

_____
Leach, J.

WE CONCUR:

_____

_____